In the Matter of JOSEPH HOFBAUER, a Child Alleged to be Neglected. SARATOGA COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; JOHN HOFBAUER et al., Respondents; ROBERT P. WHALEN, as Commissioner of Health of the State of New York, et al., Intervenors-Appellants.

Third Department, December 14, 1978

**APPEARANCES OF COUNSEL**

*Francis E. Dorsey* for appellant.

*Louis J. Lefkowitz, Attorney-General (Douglas K. McGivney* and *Ruth Kessler Toch* of counsel), for intervenors-appellants.

*Di Fabio & Couch (Leslie F. Couch* of counsel), for respondent.

*Courtenay Hall, Law Guardian* for Joseph Hofbauer.

**OPINION OF THE COURT**

SWEENEY, J.

This seemingly ubiquitous controversy has presented issues for our determination on two previous occasions within the year. On the first occasion we granted the application of the New York Commissioners of Health and Social Services to intervene and become parties to the neglect proceeding (61 AD2d 1102). The second time we directed a speedy disposition on the merits (62 AD2d 508). Pursuant to our direction, a hearing was held and the trial court dismissed the petition, finding Joseph Hofbauer, age eight, not to be a neglected child. This appeal followed.

The relevant facts may be succinctly stated. On October 25, 1977, it was determined that Joseph was suffering from Hodgkin's Disease which is almost always fatal if untreated. The then attending physician recommended hospitalization for tests and treatment which would have included radiation and possibly chemotherapy (conventional treatment). Instead, the parents elected to take Joseph to Fairfield Medical Clinic in Jamaica where he was to receive nutritional or metabolic therapy, including injections of laetrile. Thereafter, on his return to this area, the instant neglect proceeding, pursuant to article 10 of the Family Court Act, was commenced. It was alleged in the petition that Joseph's physical condition had been impaired and was in imminent danger of being further impaired as a result of the failure of his parents to exercise a minimal degree of care in supplying the child medical care

though financially able to do so. The charge of neglect was specifically based on the parents' failure to follow the recommendation of the then attending physician regarding treatment and instead providing treatment in the form of nutritional therapy and laetrile.

Examination of this rather voluminous record reveals that much of the testimony is medical in nature dealing with the efficacy of the two modes of medical treatment. Although seven of the physicians who testified for petitioners had never personally examined Joseph, each was qualified to treat his ailment. These physicians testified, in substance, that radiation and chemotherapy were accepted methods of treatment and, in answer to a hypothetical question, stated essentially that nutritional therapy was inadequate and ineffective. Petitioners also produced two additional physicians who, by stipulation, had examined Joseph during the hearing. The first testified that he had previously examined the child some six months prior and in his opinion the extent of the disease was greater than observed on the first examination. He concluded that the treatment being received by the boy was ineffective. The second doctor opined that there had been a definite progression of the disease in the neck since the first report of October, 1977. He also concluded that the treatment being rendered was ineffective.

The first two physicians produced by respondents testified that they prescribed nutritional therapy for the treatment of cancer patients but did not rule out conventional therapy in all cases. They both agreed that nutritional therapy is a beneficial mode of treatment. Also testifying on behalf of respondents was the present attending physician of Joseph who has had the boy under his care since December, 1977. He described in some detail the program of treatment being administered since December, 1977 and stated that he had consulted with numerous other physicians concerning the boy's treatment. He testified that he considered conventional treatment a possible alternative to nutritional therapy if the boy's condition appeared to be getting out of control. Significantly, the father testified that he would agree to conventional therapy if the attending physician so advised. The doctor further stated that he believed the program followed was controlling the disease. Respondents also produced two scientists, one of whom testified to significant regression in cancerous tumors in mice treated with amygdalin (laetrile) in con-

junction with other substances. Both petitioners' and respondents' witnesses testified to the deleterious side effects of radiation and chemotherapy.

While much of this conflicting testimony was devoted to the relative merit of the two methods of treatment, the issue for our determination is not which is the better treatment. Nor is it which method we or someone else would select under similar circumstances. A neglected child is a child less than 18 years of age whose physical condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent to exercise a minimum degree of care in supplying the child with adequate medical care, though financially able to do so (Family Ct Act, § 1012, subd [f], par [i], cl [A]). The critical issue, as we see it, is whether Joseph's parents supplied him with adequate medical treatment. To resolve this issue we must examine the nature and quality of the medical care provided the child.

■ We note at this juncture that neither the briefs nor our research has revealed any appellate case precisely in point. All of the cases examined by us are clearly factually distinguishable. For example, in a decision affirming an order requiring a child's parents to allow the child to undergo chemotherapy treatment for leukemia, the court did not reach the question of the State's right to intervene in parental decisions concerning a child's medical treatment because there was no proof in the record concerning an alternative treatment and the parents had expressed the intention of disallowing chemotherapy treatment regardless of whether an alternative treatment was available *(Custody of a Minor,* 379 NE2d 1053 [Mass]). It is firmly established, however, that the State, under appropriate circumstances, may provide medical care for a minor where the parent or guardian fails to do so (see *Matter of Sampson,* 37 AD2d 668, affd 29 NY2d 900). The primary right, duty and privilege to select the type of medical care to be given and the physician to administer it belong to the parent. This cherished right, based on parenthood, should not be lightly usurped by the State *(Matter of Bennett v Jeffreys,* 40 NY2d 543). The State has the burden of establishing neglect (see *Matter of C. [Anonymous] Children,* 55 AD2d 646).

■ Turning to the testimony in the instant case, we initially point out that this is not a situation where the child is receiving no treatment, but rather one where the doctors

differ as to the utility of the treatment being received. Concededly, the attending physician selected by the parents is one duly licensed by the State of New York to practice medicine. Furthermore, no appropriate State agency has taken any disciplinary action against the attending physician for his treatment of the child. It is also evident to us from the record that Joseph's mother and father are concerned parents. These factors alone, however, particularly in view of the seriousness of the disease, are not sufficient to establish whether adequate medical treatment was provided. Further scrutiny of the record is required. The father had a serious concern about the deleterious side effects of the conventional treatment and the record demonstrates some justification for his concern. There is also medical proof that the nutritional treatment has been beneficial to the child and was controlling his condition; that several doctors have been consulted by the attending physician and have examined Joseph and contribute to his care; that such treatment is not toxic as is the conventional treatment; and that conventional treatment will be resorted to if the child's condition so warrants. Although much of this testimony was contradicted, such contradictions merely raised questions of fact and credibility for the trier of the facts who normally can determine such matters with greater safety than appellate courts *(Bandike Assoc. v B. B. M. Realty Corp.,* 44 AD2d 622). Considering the record in its entirety and the fact that parents may initially rely on the competency of the physician selected since he was licensed by the State *(Doe v Bolton,* 410 US 179), we are of the view that there is ample proof to support the findings and determination of the trial court.

The order should be affirmed, without costs.

MAHONEY, P. J., GREENBLOTT, KANE and STALEY, JR., JJ., concur.

Order affirmed, without costs.