OPINION OF THE COURT
Martin B. Stecher, J.
By order to show cause dated August 28, 1979, the petitioner, chief executive officer of Misericordia Hospital, petitioned to be appointed guardian of the infant girl born to Lena Vataj on August 20, 1979, for "the sole purpose of *700 consenting to repair of Meningomyelocele,” a spinal disorder with which the infant was born.
According to the Nelson Textbook of Pediatrics ([10th ed], p 1412 et seq.), spina bifida with meningomyelocele "is a midline defect of skin, vertebral arches and neural tube, usually in the lumbosacral region * * * [It] is evident at birth as a skin defect over the back, bordered laterally by bony prominences of the unfused neural arches of the vertebrae. The defect is usually covered by a transparent membrane which may have neural tissue attached to its inner surface.” Cerebrospinal fluid may accumulate under the membrane causing it to bulge. This is the condition with which the Vataj infant was born.
Failure to repair the opening presents a danger of perforation, highly probable infection, such as spinal meningitis, and death. The likelihood of survival beyond the age of six months is poor, absent treatment. Treatment is recommended within 48 hours of birth. The membrane covering this child’s lesion shows signs of progressive erosion making immediate surgery necessary.
The parents have refused treatment and insist on taking the child home. Their attitude, as expressed by the child’s father, is "let God decide” if the child is to live or die.[1] Their rejection of treatment does not appear to stem from the kind of religious conviction with which Judges are often faced (cf. Matter of President & Directors of Georgetown Coll., 331 F2d 1000, reh den 331 F2d 1010, cert den 377 US 978).
Initially, the father consented to surgery but appears to have withdrawn that consent only when the potential enormity of this disorder was fully explained to him by the physicians.
The degree of neural disfunction in a spina bifida case is related to the location of the lesion in the spine. The higher it occurs, the greater the number of organs removed from voluntary control. A cervical or thoracic lesion, for instance, presents a high probability of an invalid life, paralyzed and *701 impaired in most functions. The lower the lesion, the better the opportunity for a useful life providing many of its satisfactions. The Vataj baby has a relatively low lesion. Treated, her extremity deficits will, hopefully, be only at the leg level below the ankles. Additionally, she will lack sphincter control of the bladder and anus; but modern medicine and surgery can "ameliorate these conditions too. She should be able to walk with short leg braces and hopefully have a "normal” intellectual development.
Children suffering from this disorder usually run a high risk of hydrocephalus, a disorder in which fluid fails to drain from the cranial areas. Untreated, hydrocephalus results in grossly distorted skull growth and mental retardation. Where a child shows evidence of hydrocephalus at birth, prognosis is poor. Later developing hydrocephalus is treatable by a "shunt” operation, providing a drain for the excess fluid; and, if successfully treated, the distortion may be avoided and the chances of retardation substantially reduced.
The Vataj child shows no present sign of hydrocephalus.
This is not a case where the court is asked to preserve an existence which cannot be a life. What is asked is that a child born with handicaps be given a reasonable opportunity to live, to grow and hopefully to surmount those handicaps. If the power to make that choice is vested in the court, there can be no doubt as to what the choice must be.
The Supreme Court, under its general equity jurisdiction, may act as parens patriae to protect an infant unable to protect her own interests (Matter of Weberlist, 79 Misc 2d 753, 755-756). Additionally, there is statutory authority. The statutory authority for this proceeding is to be found in article 10 of the Family Court Act which defines a neglected child (Family Ct Act, § 1012, subd [f], par [i], cl [A]) as one, among others, whose "physical * * * condition * * * is in imminent danger of becoming impaired as a result of the failure of his parent * * * to exercise a minimum degree of care * * * in supplying the child with adequate * * * surgical care, though financially able to do so or offered financial or other reasonable means to do so”.[2]
From the evidence adduced — and there was no contrary or *702 conflicting evidence — and after hearing held on August 30 and September 4, 1979, I find that this infant’s physical condition is in imminent danger of becoming impaired unless the recommended surgery is performed; that irrespective of the parents’ financial means, thus far undisclosed, the opportunity to have the surgery performed by a competent surgeon is available and that the parents of the child, without justification, réfuse to consent to that surgery.
The argument is made that by granting the petition the parental right to choose the treatment, upbringing and welfare of the child is infringed upon by the court. (Cf. United States v Orito, 413 US 139, 142; Roe v Wade, 410 US 113, 152-153; Pierce v Society of Sisters, 268 US 510, 534-535; Meyer v Nebraska, 262 US 390, 399.)
Parental rights, however, are not absolute. Children are not property whose disposition is left to parental discretion without hindrance (Parham v J. R., 442 US 584; Matter of Bennett v Jeffreys, 40 NY2d 543). Where the child’s welfare demands judicial intervention, this court is empowered to intervene (Matter of Sampson, supra). Certainly, every physician who prefers a course of treatment rejected by a parent is not privileged to have the court decide upon the treatment under its parens patriae powers (cf. Matter of Seiferth, 309 NY 80; Matter of Hofbauer, 65 AD2d 108; Matter of Philip B., 92 Cal App 3d 796, lv to app den — Cal 2d —).
But where, as here, a child has a reasonable chance to live a useful, fulfilled life, the court will not permit parental inaction to deny that chance.
There is a hint in this proceeding of a philosophy that newborn, "hopeless” lives should be permitted to expire without an effort to save those lives. Fortunately, the medical evidence here is such that we do not confront a "hopeless” life. As Justice Asch has pointed out (Matter of Weberlist, supra, p 757), "(t)here is a strident cry in America to terminate the lives of other people — deemed physically or mentally defective.” This court was not constituted to heed that cry. Rather, to paraphrase Justice Asch (supra) it is our function to secure to each his opportunity for "life, liberty and the pursuit of happiness.”
The petition is granted to the extent of designating Simon Rosenzweig, Esq., of 122 East 42nd Street, New York City, guardian of "Baby Girl” Vataj for the purpose of consenting to *703 the surgery for the repair of the meningomyelocele, the shunt operation for treatment of hydrocephalus, the selection of a hospital in which such surgery shall be performed and the selection of such physician or physicians as shall be required to render such treatment to the child.
This constitutes the decision and judgment of the court. The execution of the judgment is stayed until 11:00 a.m., September 7, 1979.

. There has been some expression of fear on the parents’ part that this disorder is so rare that the petitioner and associated physicians regard the child as an object of experimentation. Unfortunately, spin a bifida is not that rare. It has been estimated that its incidence varies between 0.5 and 4 per thousand and that in this area the incidence is about 3 per thousand. It would thus appear that of 106,000 births recorded in this city in 1978, approximately 300 cases of this disorder could have been expected to appear in New York City alone.

. Although "exclusive original jurisdiction * * * under this article” is vested in the Family Court (Family Ct Act, § 1013), it is clear that the Family Court shares that jurisdiction with the Supreme Court (Family Ct Act, § 114; NY Const, art VI, § 7; see Matter of Sampson, 37 AD2d 668, affd 29 NY2d 900).