■ In the Matter of Rose B., a Child Alleged to be Abused and Neglected. Bernhardt S. Kramer, as Commissioner of the Ulster County Department of Social Services, Appellant; David B., Respondent. — Appeal from an order of the Family Court of Ulster County, entered February 5, 1980, which

dismissed a petiton of the Ulster County Commissioner of Social Services, alleging that the respondent had abused and neglected his child. On November 13, 1979, the school nurse teacher observed scratches and bruises about the face and neck of Rose B., an 11-year-old student, and upon examination discovered numerous open sores and scabbed surfaces on her buttocks, thighs and shoulders. When queried as to the cause of this condition, Rose answered that it was the result of beatings administered by her father, the respondent, through the use of his belt. After the lodging of a complaint, Rose was temporarily removed from the home where she had been residing with her father, his girlfriend Debbie and their infant son and was placed in the custody of the Ulster County Commissioner of Social Services (hereafter Commissioner). The Commissioner, on November 16, 1979, filed a petition with the Ulster County Family Court alleging Rose to be an abused and neglected child and on December 10, 1979 the court, after observing the infant and holding a preliminary hearing, ordered continuing custody in the Commissioner because "it would be contrary to the welfare of the child to be returned to her home". It should be noted, at this point, that although fully apprised of his right to legal representation pursuant to section 262 of the Family Court Act, the respondent declined his right to counsel. In addition, although twice advised of the pendency of this appeal, respondent has not appeared in any manner. A fact-finding hearing was begun on January 6, 1980 and, thereafter, on January 25, 1980 the Family Court dismissed the petition upon its finding that the facts established were insufficient to sustain the petition. When a notice of appeal from the resultant order was filed, that portion of the order directing the return of the child to respondent was stayed pending the outcome of the appeal. While we agree that the Commissioner may have failed to present the necessary preponderance of evidence necessary to sustain a finding of abuse, we conclude otherwise in reference to the charge of neglect. Section 1012 (subd [f], par [i]) of the Family Court Act defines a neglected child as one: "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care". The Commissioner has the burden of establishing neglect *(Matter of Hofbauer,* 65 AD2d 108, affd 47 NY2d 648; *Matter of C. Children,* 55 AD2d 646). However, after the establishment of a prima facie case, the burden of proof shifts to the respondent who is then required to present a satisfactory explanation (cf. *Matter of Tashyne L.,* 53 AD2d 629, 630; see *Matter of Roman,* 94 Misc 2d 796; *Matter of Young,* 50 Misc 2d 271). If the condition of the child is of such a nature as could not ordinarily occur or exist except by reason of the acts or omissions of the parent, the condition constitutes prima facie evidence of abuse or neglect (Family Ct Act, § 1046, subd [a], par [ii]). The in-court and out-of-court accounts of events related by Rose were, in large measure, corroborated by the sworn testimony of several witnesses. The school doctor, while conceding that the sores on Rose's body could have been caused by a physical malady or disease, testified unequivocally that the linear lacerations in the buttocks' area had "to be inflicted by an instrument of some type". The school nurse opined that the conditions she observed were such as might normally be expected to occur after beatings administered with a belt. She also testified as to having observed Rose with both eyes blackened upon an occasion when she went to Rose's home to inquire why she was not in school. The school psychologist testified that Rose was constricted, depressed and unable to communicate easily and was an unhappy child. A social worker who had been involved with the family from July through November of 1979 made similar observations and referred to the dramatic and almost instant improvement

Rose demonstrated, emotionally and academically, after removal from the home. The respondent's explanation was patently feeble. Although he stated he was completely unaware of his daughter's condition until it was brought to his attention by the school authorities, he attributed the presence of the sores on her body to excessive scratching of insect bites and to allergies. As to the presence of linear abrasions, he assigned the wearing of too tight a belt as the reason, a theory clearly belied by the color photographs in evidence. He had no explanation for the blackened eyes save for the mention of the possibility that Rose had fallen from her bed. While respondent generally denied striking the infant, he did concede that some time before the discovery of her condition he had disciplined her with his belt. The petitioner has established by a preponderance of credible evidence that this young girl's physical and emotional condition has been impaired through the unreasonable infliction of harm by striking and by a failure to use even a minimum degree of care in attending to her needs (Family Ct Act, § 1012, subd [f], par [i], cls [A], [B]). A finding of neglect is warranted on this record. Order reversed, on the facts, without costs; petition granted to the extent of finding Rose B. a neglected child, and matter remitted to Family Court for a dispositional hearing. Kane, J. P., Main, Mikoll, Casey and Herlihy, JJ., concur.