Ralph E. Cory, J.
The petition alleges that ‘ ‘ the above
child, Milton Edwards*, was admitted to Staten Island Hospital on March 23,1972 with scratch marks on his face and abdomen, and swollen shoulder joints due to trauma. An old fracture of the left clavicle and protein deficiency were detected. The respondent parents gave no adequate explanation of the above. By reason of the above, the. child Richard Edwards*, born May 9,1970, is a neglected child.”
*859 On April 21, 1972, presiding Judge Gartenstein’s indorsement amended the petition to include Richard Edwards*, born May 9, 1970. ‘ ‘ Where one child has been abused, discretion must be exercised to protect the others in the household who cannot protect themselves.”
The undisputed facts as developed from the credible evidence are as follows:
Medical testimony by the doctor who treated the child Milton* was to the effect that the injury (swollen shoulder joints) was due to trauma, ruling out all other probabilities such as accidental fall which the parents contend is what happened. Their testimony was that the child fell off the bed and was injured when the father picked him up suddenly and jerkily in sweeping motion upward. The parents did not think the child was injured. The respondent mother rushed him to the hospital on March 23, 1972 when the condition of the child worsened.
The doctor testified that both shoulders were swollen and tender and the child had a fever of 102° upon its admission to the hospital. The child had scratch marks upon its face and body. X rays were taken of the child which revealed a fracture of both shoulders with the middle of the left clavicle healing. There were shoulder lesions and the covering of the bones had separated. The injury to these bones had caused some blood to ooze under the membranes. The doctor testified that this type of bleeding was commonly associated with trauma. The fever was due to the swelling in the shoulder and there was further medical testimony that the injury by itself could cause the fever. The child also had a cold in the nature of an upper respiratory infection.
There was undisputed medical testimony that the child had an old injury to the shoulder (clavicle) which was healing. It was estimated by the doctor that this injury was five or six months old. No satisfactory explanation was offered by the respondent parents as to how the old injury occurred.
The respondent father admits that his acts in picking the child up angrily and jerking him upward in a sudden sweeping motion caused the injury to the upper arms of his child. He stated, however, he did not intend to injure the child. He testified he was not angry at the child but at his wife and that he was tired, having worked all night.
“ The streets of hell are paved with good intentions.” The luxury of good intentions is not allowed to a careless parent where a defenseless one-year-old child is injured as here. A one-year-old child is not a rubber ball to be tossed upward *860 and swung into the air like a toy. A person, under the law, is presumed to know the consequences of his act and is held responsible for them. Anger and frustration and tiredness should not be taken out on a child.
Bemorse and statements that no harm was intended are no soothing balm for a seriously injured child. The law properly provides for intervention by society when parental care is deemed dangerously faulty or insufficient. But the question is one of degree and the law must be flexible enough so that the State may intrude upon the sanctuary of the family only in the most justifiable circumstances. The circumstances are justifiable under the facts and circumstances of this case. (Paulsen, The Legal Framework for Child Protection, 66 Col. L. Bev. 679 [1966]; Family Ct. Act, art. 10, as added by L. 1970, ch. 962.)
The attorney for the respondents argues that there was no pattern of child abuse here and that there was one single unfortunate incident in an otherwise normal home life pattern. Medical evidence adduced at the hearing is to the contrary, however, because of the old injury to the child’s shoulder, five or six months old, which was never satisfactorily explained by the parents.
Section 1046 (subd. [a], par. [ii]) of the Family Court Act permits an inference of neglect to be drawn from the child’s age or condition unless the respondent parents take the stand and offer satisfactory proof to negate the prima facie case established by statute if the injuries are not satisfactorily explained. Proof of abuse by a parent or. parents is difficult because such actions occur ordinarily in the privacy of the home without outside witnesses. Without satisfactory explanation by the parents, a finding of neglect will be made against the parent. (Matter of S., 46 Misc 2d 161; Matter of Young, 50 Misc 2d 271.) Both of these cases uphold the statutory presumption of section 1046 (subd. [a], par. [ii]).
The facts of this case fit exactly under section 1046 (subd. [a], par. [ii]) of the Family Court Act “proof of injuries sustained by a child * * * by reason of the acts of omissions of the parent * * * shall be prima facie evidence of child abuse or neglect ”.
In addition to the presumption of this statute, we have the admission by the respondent father that he caused the second injury to the child Milton by seizing him suddenly and jerking him upward albeit without any intent to injure the child and in a fit of anger at his wife and not the child. Medical testimony, however, states this was not the exact cause of injury *861 to the child’s shoulder since there were no injuries to forearms under the wrists.
There was no direct medical testimony to substantiate respondents ’ claim that the child was injured falling off the bed.
The burden of proof has been met by the petitioner (prima facie case); a preponderance of the relevant competent material evidence has been shown. (§ 1046, subd. [b], par. [ii].)
The respondents have not overcome the prima facie case and they have not offered satisfactory proof or explanation of the child’s injuries. (Matter of Young, supra.)
On the basis of the strong links forged in the chain of evidence and since there was no effective rebuttal of the prima facie case, there is a finding of child abuse against the respondent father as to child Milton; there is a finding of neglect against the respondent mother because there is no credible evidenece that she directly committed any act causing serious injury to the child Milton, and the charge of child abuse against her is reduced to neglect. This would be due to improper supervision allowing the child to fall off the bed and failing to exercise a minimum degree of care. (Family Ct. Act, § 1012.)
There is also a finding of neglect against both parents relating to Richard Edwards under section 1028 of the Family Court Act. This is based on the exercise of discretion of the Family Court as parens patriae in view of the findings of child abuse by the father against the child Milton and neglect against this child by the mother, to avoid an imminent risk to the child’s life or health.
Although there is not one scintilla of evidence to show abuse or neglect of the child Richard, to remove the child from the home is not a violation of due process or a violation of their constitutional rights.
The welfare of the child is the objective in neglect cases; inquiry is addressed to whether the child’s welfare requires his removal from the home. (Matter of Blaine, 54 Misc 2d 248.)
Section 1012 (subd. [f], par. [i], subpar. [B]) foresaw the dangers in the instant neglect petition that another child in the household would be in imminent danger because of assaultive parents by providing the words “ora substantial risk thereof ” in describing parents who fail to exercise a minimum degree of care. The legislative intent here is clear to guard against a child not only whose physical, mental or emotional condition has been impaired but “ is in imminent danger of becoming impaired”. (Family Ct. Act, § 1012, subd. [f], par. [i].)
*862 There has already been a finding, after a long fact finding hearing, of child abuse and neglect against the respondent parents as to child Milton on the original child abuse petition.
The record is therefore sufficient to make the conclusion inescapable that the other child Richard is likely to suffer serious harm from improper guardianship.
There is ample proof in the record that both parents are ignorant of proper child care and supervision and serious injuries have occurred to the child Milton as the direct result of the respondents’ acts of omission and commission. There are warning signs that this court or any court faced with a similar problem could not safely ignore.
Section 1046 (.subd. [a], par. [i]) of the Family Court Act states that proof of abuse or neglect of one child shall be admissible evidence in the issue of neglect of any other child or the legal responsibility of the respondent. Experience has shown that a parent who abuses one of his children is likely to abuse his other children. This has become a rule of evidence in child protective proceedings. Accordingly, when an abused child has been removed by a Family Court order from its parents, a social welfare worker or other proper petitioner may file a neglect petition against such parent for the removal of his other children, alleging that such parent is likely to abuse them too. Such petition will not be dismissed as legally insufficient. (Matter of Abeena H., 64 Misc 2d 965.)
There is a far more dangerous pattern of neglect and child abuse established in the instant petition. Already faced with a finding of child abuse and neglect on the same child as well as a previously unexplained injury, there is no doubt in the court’s mind that the removal of the other child from the home of her parents is not only necessary, proper and legal, but imperative under all the facts and circumstances.
In neglect proceedings, the court’s duty is to determine whether, despite any past deficiency, children are at the time of the hearing suffering or likely to suffer from neglect. It is the function of the trial court to determine whether neglect exists. (Matter of Vulon, 56 Misc 2d 19.)
In child protective proceedings by logical extension of the doctrine, it is also the function of the trial court to determine not only whether neglect or far more serious child abuse exists or that is likely to exist. "When the warning flags from the storms of abuse and neglect are still flying and there is a clear and present danger to children, the court must exercise its proper function in removing the other child from the home, (Schenck v. United States, 249 U. S. 47.)
*863 Acting in the best interests and welfare of children is not denial of due process. Bather, and what is more important, it is the highest form of due process for neglected and abused children and those likely to become so because of assaultive tendencies of parents already established including mistreatment of children in the form of physical assault and acts of omission involving improper supervision. The action taken here in removing the child Bichard from the home prior to the hearing is based on probable cause, not mere suspicion. (Matter of Fred S., 66 Misc 2d 683, 696, 697, 698.)
Accordingly, as to the neglect portion of the petition concerning the child Bichard, there is a finding of neglect under section 1028 of the Family Court Act against both parents, by the court, as parens patriae to avoid an imminent risk to the child’s life or health in view of the other findings on the other portion of the petition as to child Milton.
Child protective proceedings under article 10 of the Family Court Act are not criminal proceedings and do not become so unless referred to the District Attorney or an appropriate Criminal Court under section 1014 of the Family Court Act. Therefore the arguments of the attorney for the respondents in his summation that there was no criminal intent, no mens rea, no guilty mipd, do not apply in this case.
The respondents’ attorney’s arguments that the children should be returned to their parents, that there is no danger to the children anymore and that the parents are remorseful are proper subjects for full investigation by the Probation Department of the court prior to the dispositional hearing. Only then can it be determined that the parents should be given another chance.
Parental custody is always preferable but the realities of the situation here mitigate against even a temporary custody to the parents at this time.
Parents are required to be responsible, not perfect. Besponsibility has been replaced here with immaturity, carelessness, stupidity and a reckless disregard for the physical well-being of children.
It is hoped that sometime in the future there can be a joyful reunion of children with the parents. That is the function of this court on the social side. ‘ ‘ The walls that are laid in darkness May laugh to the kiss of the sun.”
But for now, based on all of the foregoing, a finding of child abuse and neglect has been made. Accordingly, the court acquires not only broad authority to control the life of the family, *864 but even to deprive parents of their cardinal right to custody of their children. (Matter of Vulon, 56 Misc 2d 19, supra.)
The possibility that certain abuse that will arise if the children are removed from the parents, as contended by the attorney for the respondents is a legal non sequitur. The Probation Department is ordered to conduct immediately a complete and thorough predispositional hearing investigation on the finding of child abuse by the father against the child Milton, on the finding of neglect by the mother against the child Milton and on the finding of neglect against both parents against the child Richard.
The children Milton and Richard are continued in temporary custody of the maternal grandmother with whom they are now residing until the dispositional hearing on' August 30, 1972.
The temporary order of protection as per order of this court on May 19, 1972 which forbids the respondent parents to interfere in the custody of the children in any way, manner or form while said children are living with their maternal grandmother as temporary custodian, is continued until the date of the dispositional hearing.