OPINION OF THE COURT
Kevin C. Fogarty, J.
This proceeding was instituted by the Queensboro Society for Prevention of Cruelty to Children alleging that the respondent father had placed the child Ann Marie in imminent danger in that he “touches and rubs said child’s genitals with his hands * * * the respondent frequently beats and pushes the child Christine leaving contusions about said child’s body and respondent father drinks to an excess and takes Valium.”
The petitioner’s evidence introduced at the trial was the testimony of the respondent’s wife and mother of the two children, the protective caseworker, and the child Christine.
Nadine H. testified that the sexual abuse of the child Ann Marie began in the summer of 1981 and consisted of “the father putting his leg over the child, rubbing her back and the child wiggling.” Additionally, the mother stated that Ann Marie, who is now four years old, told her that “Daddy put his bone in my mouth and make pee pee all over my mouth” and that “Daddy split my pee pee in two” and repeated the statements in front of a third party. Ann Marie, in view of her age, was not called as a witness nor *476 was the third party who was allegedly present called to testify. Additionally, the mother testified that the respondent has continuously beaten the children since Christine was one and one-half years old and that he had regularly grabbed and yanked the children and on one or two occasions punched Christine.
The respondent testified in his own behalf and categorically denied all allegations. He attributed the making of the charges to his wife’s emotional state in August, 1981 when he ordered her parents to leave their marital home to which he had invited them in March, 1981. He noted that she filed the instant petition approximately one week after having been notified that she had passed her medical exams and therefore would no longer need his support. She filed them at the time when she knew he was out of the country and would so remain for a number of weeks.
As in so many of these child abuse proceedings, the events have occurred away from the view of outside disinterested parties and therefore credibility becomes a major factor in seeking to determine the truth.
The present proceeding is complicated by the fact that there is a family offense petition and a custody/visitation petition also pending in this court and a divorce action pending in Supreme Court. The outcome of the custody/visitation proceeding obviously will be greatly affected by any finding in this matter.
Both parties appear to the court to be devoted parents who have the welfare of their children (as each separately perceives it) as their primary concern.
The child Christine, who testified, appears already to have been seriously affected by the battling between the parents. Her anger and resolve to have no dealings with her father appear to be clearly the emanations of a child so strongly influenced by her mother that she lacks any credibility as a witness. Her testimony as to the facts supported her mother’s version but also in certain key elements completely contradicted her mother.
There are many questions raised by the timing of the complaints in this proceeding. Whether or not these were coincidences or carefully planned strategies of the mother *477 is not clear. The complaints to police and others were made only after the mother’s family had been ordered out of the house by the respondent; the family offense petition was filed in this court the day before the respondent left for France and the mother claimed that his whereabouts were unknown. The complaint states that she consulted an attorney in mid-August when the sexual abuse became known to her and that the attorney advised her to do nothing until an understanding could be reached.
The respondent’s counsel, urges that in light of the United States Supreme Court decision in Santosky v Kramer (455 US 745), the present statutory burden of proof found in subdivision (b) of section 1046 of the Family Court Act, preponderance of the evidence, must be supplanted by a clear and convincing standard for any finding of child abuse because a child abuse proceeding, being akin to criminal statutes, requires clear and convincing proof as the permissible standard.
Pursuant to CPLR 1012, the Attorney-General of the State of New York was notified regarding the constitutional challenge. He has declined to enter the proceedings at this time.
The issue is not new and has repeatedly arisen. See Matter of J. R. (87 Misc 2d 900) for an excellent analysis and appraisal by Judge Gartenstein; and Matter of Fred S. (66 Misc 2d 683), dealing with the beyond a reasonable doubt standard. Also see Matter of Pablo C. (108 Misc 2d 842), where Judge Thorpe sets out the history and significance of the rule as it applies to custody and visitation, matters which are also involved in these proceedings.
The handbook for proceedings in the New York Family Court of the State of New York, prepared under the direction of the Office of Projects Development of the Appellate Division, First Department, notes that “Preponderance standard may be unconstitutional given the nature of the proceeding” citing Matter of Winship (397 US 358), where the Supreme Court required the beyond a reasonable doubt standard in juvenile delinquency cases although the preponderance standard was upheld in Matter of Fred S. (supra). But see Addington v Texas (441 US 418), where *478 the Supreme Court required clear and convincing evidence in civil commitment cases.
Two recent events have sparked renewed interest in the reconsideration of this rule. The decision of the United States Supreme Court in Santosky v Kramer (supra) and the amendment to the Social Services Law and Family Court Act by chapter 739 of the Laws of 1981 adding child abuse to the categories of behavior which may be the basis for permanent termination of parental rights. (Family Ct Act, § 1035, subd [b]; Social Services Law, § 384-b, subd 4, par [e]; subd 8.)
Article 10 of the Family Court Act states as its purpose: “This article is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met.”
In Matter of Michael B. (60 AD2d 628), the Appellate Division held that “In a child neglect proceeding the requirements of due process are satisfied * * * [when] the fact that the child is neglected [is] established by a preponderance of the evidence (Matter of Ella B., 30 NY2d 352; Matter of Cardinal [Munyan], 30 AD2d 444; Matter of Fred S., 66 Misc 2d 683, 688, 692).”
In Matter of J. R. (supra), a child abuse proceeding, the respondent’s challenge to the preponderance rule was based on Matter of Alsager v District Ct. of Polk County, Iowa (406 F Supp 10), wherein the United States District Court for the Southern District of Iowa held a termination of parental rights statute of Iowa unconstitutional for its failure to afford procedural due process in requiring clear and convincing evidence as opposed to the preponderance standard then in effect.
Matter of J. R. then turns to the “classic” holding that a State has the right to establish its own standards for the ultimate burden of persuasion citing Lavine v Milne (424 US 577, 585), wherein the court stated that: “[o]utside the criminal law area, where special concerns attend, the locus *479 of the burden of persuasion is normally not an issue of federal constitutional moment.”
In Matter of Fred S. (supra), the court was dealing with a challenge to the preponderance rule (Family Ct Act, § 1046, subd [b]), which sought to require the criminal law standard of beyond a reasonable doubt. Citing Matter of Young (50 Misc 2d 271), the court held that “[t]he preponderance of evidence rule hence applies to the instant petition, both as to neglect and child abuse. * * * Due process is not violated by the application of the preponderance rule. * * * Child abuse and neglect cases are civil matters. Hence, the preponderance of evidence rule is legally and constitutionally sufficient. * * * The Family Court is basically civil court and not criminal court and the rules of civil procedure (CPLR) rather than more stringent rules of criminal procedure should prevail. (Family Ct. Act § 164; Matter of Walsh, 59 Misc 2d 917; Code Crim. Pro., § 11 subd. 7; Matter of Rust, 53 Misc 2d 51; Matter of Williams, 49 Misc 2d 154; Matter of Rooney, 48 Misc 2d 890.)” (Matter of Fred S., 66 Misc 2d 683, 688-689, supra; emphasis supplied.)
The United States Supreme Court in Santosky (supra) made a number of striking statements which bear directly on the questions raised in earlier decisions and requires a re-evaluation of those decisions.
“The ‘minimum requirements [of procedural due process] being a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining, the preconditions to adverse officials action.’ Vitek v Jones, 445 US 480, 491 * * * See also Long v Zimmerman Brush Co., _ US _, _ * * * Moreover, the degree of proof required in a particular type of proceeding ‘is the kind of question which has traditionally been left to the judiciary to resolve.’ Woodby v INS, 385 US 276, 284 * * * ‘In cases involving individual rights, whether criminal or civil, “[t]he standard of proof [at a minimum] reflects the value society places on individual liberty.” ’ Addington v Texas, 441 US, at 425 * * * quoting Tippett v. Maryland, 436 F2d 1153, 1166 (CA4 1971) (opinion concurring in part and *480 dissenting in part), cert dismissed sub nom. Murel v Baltimore City Criminal Court, 407 U.S. 355 * **§* *
“This Court has mandated an intermediate standard of proof — ‘clear and convincing evidence’ — when the individual interest at stake in a state proceeding are both ‘particularly important’ and ‘more substantial than mere loss of money.’ Addington v Texas, 441 US at 424 * * * Notwithstanding ‘the state’s “civil labels and good intentions,” ’ id., at 427 * * * quoting In re Winship, 397 US, at 365-366 * * * the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with ‘a significant deprivation of liberty’ or ‘stigma.’ 441 US, at 425, 426”. (Santosky v Kramer, 455 US 745, _, supra.)
The Supreme Court’s decisions concerning constitutional burdens of proof have not turned on any presumption favoring any particular standard. To the contrary, the court has engaged in a straightforward consideration of the factors identified in Matthews v Eldridge (424 US 319), to determine whether a particular standard of proof in a particular proceeding satisfies due process.
The “three distinct factors” specified in Matthews v Eldridge (424 US 319, 335, supra), are (a) the private interests affected by the proceeding; (b) the risk of error created by the State’s chosen procedure; and (c) the countervailing governmental interest supporting use of the challenged procedure.
Herein the private interests affected by the proceeding are the stigma of child abuse, possible criminal prosecutions, and possible termination of parental rights.*
*481 The risk of error is great. “[M]any Family Court decisions are, at best, calculated gambles based on careful but highly subjective predictions of how parents will care for their children. Unless the judge takes no chances and removes all children from all offending or possible offending parents, some children will suffer further injury and even death after their cases are brought to Court.” (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 1011.)
“[T]he preponderance test is susceptible to the misinterpretation that it calls on the trier of fact merely to perform an abstract weighing of the evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of the proposition asserted”. (Dorsen & Rezneck, In Re Gault and the Future of Juvenile Law, 1 Family L Q [No. 4], pp 26-27, cited in Matter of Winship, 397 US 358, 368, supra.)
The countervailing governmental interest in supporting the use of preponderance test for both neglect and abuse is slight. Here it is important to make the distinction between a finding of neglect and a finding of abuse. Both abuse and neglect are today covered by article 10 of the Family Court Act, the prior statutory distinction under article 3 of the Family Court Act having been abolished in a 1973 revision.
Petitions may be filed combining both abuse and neglect and the court’s finding may be on one or both. Whether or not the court finds that facts constitute abuse or neglect, their dispositional alternatives are the same. (Family Ct Act, §§ 1052, 1059.) The primary focus of the statute is child protection, not punishment, for the severity of the offense. The court under section 1051 of the Family Court Act may make a finding of abuse or neglect and if such a finding is made, removal of the child may be ordered. The only distinction that the statute makes between abuse and neglect is that “If the court makes a finding of abuse, * * * *482 it shall make a further finding of the specific sex offense as defined in article one hundred thirty of the Penal Law.” (Family Ct Act, § 1051, subd [e], amd by L 1981, ch 739, §3.)
The only formal difference between either order is the court’s power under subdivision (c) of section 1051 of the Family Court Act to dismiss neglect petitions (but not abuse petitions) after a finding if the court concludes that its aid is not required on the record before it.
Clearly, the “governmental interest” can be fully satisfied at the level of neglect, which lacks the criminal aspects, the clear threat of termination, and the stigma which attaches when the more serious finding of child abuse is made.
As to the allegation of child abuse, the court, therefore, finds that the clear and convincing standard must be applied and accordingly, the petition dismissed.

 Both “severe” and “repeated” abuse are defined narrowly in section 384-b (subd 4, par [e]; subd 8) of the Social Services Law. A “severely abused” child is one who has been adjudicated as abused and who has suffered “serious physical injury”, as defined in subdivision 10 of section 10.00 of the Penal Law, “as a result of reckless or intentional acts of the parent committed under circumstances envincing a depraved indifference to human life”. This definition establishes a rigorous standard for the proof of both intent and injury, which parallels a similar language in the Penal Law. (See Penal Law, § 10.00, subd 10; § 15.05, subds 1, 3; § 120.10, subd 3 [assault, first degree]; § 120.25 [reckless endangerment, first degree].) A “repeatedly abused” child is one who has been adjudicated twice in five years as “abused”, as defined in section 1012 (subd [e], pars [i], [iii]) of the Family Court Act — that is, the child must have suffered “physical injury by other than accidental means which causes or creates a substantial risk of death, or *481 serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ” or, alternatively, must have been the victim of a felonious sex offense committed or knowingly allowed to be committed by the respondent parent. The enumerated felony sex offenses include rape, sodomy, and sexual abuse, as defined in sections 130.25, 130.30, 130.35, 130.40, 130.45, 130.50, 130.65 and 130.70 of the Penal Law. (Fink and Hallander, Juvenile Rights Division, 1981 Legis Summary.)