OPINION OF THE COURT
Aileen Haas Schwartz, J.
A novel issue is presented in this proceeding: May a confession obtained during custodial interrogation be challenged as “involuntary” upon the same grounds in a civil proceeding as in a criminal prosecution?
*163 The death of an 11-month-old infant gave rise to two proceedings against the mother, the instant civil child abuse proceeding to protect two siblings and a criminal action. In this proceeding, respondent mother moves for a pretrial suppression hearing in accordance with CPL article 710 and CPL 60.45, the governing statutory provisions to test “voluntariness” in criminal actions and proceedings.
Are the same procedural and substantive safeguards that govern admissibility of a “confession, admission or other statement” (CPL 60.45, subd 1) in a criminal proceeding also available in a civil child protection proceeding?
CPL 60.45, as recently construed by the Court of Appeals, embodies an expansive concept of “involuntariness” that encompasses constitutional principles, including the Miranda v Arizona (384 US 436) doctrine, and the traditional or common-law rules. (People v Graham, 55 NY2d 144.) Historically and analytically, the common-law rationale for exclusion of involuntary confessions in criminal actions would comprehend exclusion in civil proceedings. As the New York Court of Appeals reasoned in People v McMahon (15 NY 384, 386), in 1857:
“[A] confession obtained by either threats or promises, from any one having authority over the accused or concerned in the administration of justice, is uniformly held to be inadmissible. However slight the threat or small the inducement thus held out, the statement will be excluded as not voluntary * * *
“The principle upon which this rule is based is obvious. It is, that we cannot safely judge of the relation between the motives and the declarations of the accused, when to the natural agitation consequent upon being charged with crime is superadded the disturbance produced by hopes or fears artificially excited. It is because it is in its nature unreliable, and not on account of any impropriety in the manner of obtaining it, that the evidence is excluded. In this all the authorities agree * * * ‘A confession so obtained cannot be received, on account of the uncertainty and doubt whether the prisoner might not have been induced, from motives of fear or interest, to make an untrue statement.’ ”
Principle and precedent supported the thesis that testimonial untrustworthiness was the primary criterion for exclusion of “involuntary confessions.” Dean Wigmore emerged as the leading exponent of the so-called “orthodox view.” Other scholars, however, voiced the view that exclusion rested more firmly upon the complex of values embodied in the Fifth Amendment privilege against self incrimination. (See discussion, including excerpts in 3 Wigmore, Evidence [Chadbourn rev], pp 330-331.) In *164 a striking revision of Wigmore’s classic treatise on evidence, the 1970 edition explicitly recognized that decisions of the Supreme Court “brought about important shifts in the foundations of the law of confessions * * * Beliefs which were once orthodox are now heresy.” (3 Wigmore, Evidence [Chadbourn rev], § 822.)
“[C]onvictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological” the Supreme Court made clear in Rogers v Richmond (365 US 534, 540-541), “cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system — a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth * * * To be sure, confessions cruelly extorted may be and have been, to an unascertained extent, found to be untrustworthy. But the constitutional principle of excluding confessions that are not voluntary does not rest on this consideration” (emphasis added).
The Fifth Amendment privilege character of the constitutional law of confessions was definitively established in Jackson v Denno (378 US 368). Under scrutiny in Jackson v Denno (supra) was the then New York procedure which permitted the Judge to admit a confession into evidence if the facts “presented] a fair question as to its voluntariness * * * and leave to the jury * * * the ultimate determination of its voluntary character and also its truthfulness.” (378 US, at p 377.) That same procedure had withstood constitutional challenge in Stein v New York (346 US 156). Stein v New York (346 US, at p 192) reasoned that “reliance on a coerced confession vitiates a conviction because such a confession combines the persuasiveness of apparent conclusiveness with what judicial experience shows to be illusory and deceptive evidence. A forced confession is a false foundation for any conviction”. Accordingly, Stein v New York (supra) rejected the claim of unconstitutionality of a procedure that did not insulate the issue of voluntariness from that of veracity. Jackson v Denno (378 US, at p 391) expressly overruled Stein v New York, and declared the New York procedure unconstitutional. In so doing, Jackson v Denno (378 US, at p 385) categorically distinguished “voluntariness” and “probativeness” as discrete issues with different policy underpinnings. Indeed, the constitutional infirmity of the New York procedure was that “the evidence given the jury inevitably injects irrelevant and impermissible considerations of truthfulness of the confession *165 into the assessment of voluntariness.” (378 US, at p 386.) The constitutional law of confessions mandates procedures that “insure a reliable and clear-cut determination of the voluntariness of the confession” (p 391) by “the trial judge, another judge, or another jury, but not the convicting jury”. (378 US, at p 391, n 19.)
In compliance with the Jackson v Denno strictures, New York adopted a pretrial procedure to test the admissibility of confessions in criminal prosecutions, i.e, the Huntley hearing. (People v Huntley, 15 NY2d 72.) The New York procedure requires the prosecutor to prove voluntariness beyond a reasonable doubt (supra). By contrast, the Supreme Court has approved a preponderance of the evidence standard of proof for admissibility. (Lego v Twomey, 404 US 477.) To this day, the propriety of that lesser standard remains a subject of robust jurisprudential debate even among the Justices of the Supreme Court. (Nix v Williams, 467 US _, _, n 5, _, 104 S Ct 2501, 2509, .n 5, 2517-2518.)
The evolving constitutional law of confessions culminated in Miranda v Arizona (384 US 436, supra). Miranda v Arizona (supra) established the Fifth Amendment privilege at the custodial-interrogation stage, created a Fifth Amendment right to counsel at that stage, and prescribed procedural safeguards to ensure an intelligent and knowing exercise of the Fifth Amendment privilege. In thus vindicating the Fifth Amendment complex of values, the Miranda doctrine added a profound dimension to the voluntariness principle; failure to comply with the Miranda formula requires exclusion of a challenged statement.
Thus has the Supreme Court established a conceptual distinction between the constitutional exclusionary doctrine predicated upon the Fifth Amendment privilege and the common-law exclusionary rule premised upon the evidentiary principle of trustworthiness. Suffice it to say, that dichotomy does not pose the same problem in criminal prosecutions.
Equally clear, the interests at stake in the conventional civil proceeding, even a child protection proceeding, do not fall within the aegis of the Fifth Amendment privilege. It follows then that in this child protection proceeding the Fifth Amendment exclusionary doctrine is not available to respondent to challenge admissibility of a “statement” made during the custodial-interrogation stage of a criminal action based upon the death of her child. Needless to say the Fifth Amendment protection, indeed, the entire panoply of safeguards including the common-law exclusionary rule, is available to her in the criminal action.
*166 Does this mean there can be no challenge to admissibility of the statement in a civil proceeding? More specifically, does the common-law voluntariness rule apply in the instant case? At common law, the starting point is that “admissibility of evidence is not affected by the means by which it was obtained.” (Richardson, Evidence [Prince, 10th ed], § 588.) That basic standard, of course, yields to the fundamental precept that goes to the very integrity of the trial process — trustworthiness. The common law deems a coerced confession intrinsically untrustworthy. By what evidentiary metamorphosis should the same coerced confession deemed untrustworthy in a criminal action be deemed trustworthy in a civil action? Of particular pertinence, the New York Court of Appeals in 1857 in People v McMahon (15 NY, at p 390) made favorable reference to the application of the common-law exclusionary rule in a civil proceeding. More recently, the Court of Appeals has held the rule applicable in a civil case in which the plaintiff insured challenged the admissibility of incriminating statements made to police officers during an arson investigation. (Terpstra v Niagara Fire Ins. Co., 26 NY2d 70, 73-75.) A fortiori, in the instant child protection proceeding instituted by the State, application of the common-law exclusionary rule is required to ensure trustworthiness of the evidence and the integrity of the fact-finding process.
Although not controlling, Jackson v Denno (supra) does make pertinent the query of what procedures are appropriate for determination of voluntariness. In expressly acknowledged departure from other views, New York decisional law does not require a separate Huntley hearing to test the admissibility of a confession in a nonjury criminal trial. (People v Brown, 24 NY2d 168.) No more stringent procedures than the traditional voir dire for determination of admissibility would appear to be mandated in the instant nonjury trial. Nor it would seem is a different procedure required in a jury trial in a civil case. (See Terpstra v Niagara Fire Ins. Co., 26 NY2d, at p 73.)
There remains only the issue of the proper standard of proof for admissibility. The Supreme Court in Lego v Twomey (404 US 477, supra), most recently reaffirmed in Nix v Williams (467 US _,_, n 5,104 S Ct 2501, 2509, n 5), adopted in a criminal action the traditional standard of proof for admissibility: the preponderance of the evidence standard. Critics of that standard emphasize the compelling effect of a confession upon the fact finder and the commensurate risk of error. New York requires the most exacting standard of proof for admission of a confession in a criminal case. For like reasons, New York has adopted a clear *167 and convincing standard for admission of real evidence in a criminal action. (People v McGee, 49 NY2d 48, 59.)
To be sure, due process mandates the beyond a reasonable doubt standard for adjudication of guilt in a criminal action. (Matter of Winship, 397 US 358.) The function of a standard of proof is to instruct the fact finder of the degree of certitude required for a decision. Thus, a given standard of proof both calibrates and allocates the risk of error to be borne by the respective parties. “[T]he choice of the standard for a particular variety of adjudication * * * reflects] a very fundamental assessment of the comparative social costs of erroneous factual determinations.” Justice Harlan concurring in Matter of Winship (397 US, at p 370). “Where one party has at stake an interest of transcending value — as a criminal defendant his liberty — this margin of error is reduced as to him by the process of placing on the other party the burden * * * of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.” (Speiser v Randall, 357 US 513, 525-526.)
The New York Legislature has prescribed the traditional standard of proof in civil proceedings, the preponderance standard, for adjudication of abuse or neglect in a child protective proceeding. (Family Ct Act, § 1046.) A greater standard, it is thought, might unduly jeopardize the well-being of the child in a proceeding that is fraught with difficulty of proof. Indeed, the Legislature, in recognition of this risk, has prescribed special evidentiary rules for child protection proceedings, including the preponderance standard. (Family Ct Act, § 1046.) Of particular further interest, that special code of evidence provides, in sharp contrast with the Fifth Amendment protection of silence, “proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible”. (Family Ct Act, § 1046, subd [a], par [ii].)
Other code provisions render certain common-law exclusionary privileges, e.g., husband-wife, physician-patient, inapplicable. The clear purpose of the special code is the removal of impediments to admissibility in order to fulfill the ultimate parens patriae obligation to shield the child from neglect, physical abuse and sexual abuse. Consonant with the clear legislative intent to safeguard the child, the standard of proof for admissibility need not be greater than that required by the Supreme
*168 Court in a criminal proceeding, i.e., the preponderance standard prescribed by Lego v Twomey (supra). That standard strikes the proper balance for the competing interests at stake. A more stringent standard appears to be the very antithesis of the firm policy underpinning of the child protection provisions.[2]
Parenthetically, it should be noted that choice of a standard for admissibility governs presentation to the fact finder. It does not preclude challenge, amongst other grounds, to authenticity and truthfulness addressed to the fact finder.
Upon the foregoing reasoning, respondent’s motion for a pretrial suppression hearing is denied without prejudice to such challenge at trial, consistent with the above, as respondent may be advised.

. This conclusion is not unmindful of the questions raised about the constitutionality of the preponderance standard for fact finding in child protection proceedings in light of Santosky v Kramer (455 US 745), which held that standard constitutionally deficient for fact finding in proceedings under section 384-b of the Social Services Law to “terminate” parental rights. (See, also, Social Services Law, § 384-b, subd 4, par [e]; but cf. Santosky v Kramer, 455 US, at p 766, n 16.) A higher standard of proof for fact finding does not mandate departure from the traditional standard for admissibility.