OPINION OF THE COURT
George D. Marlow, J.
This opinion follows a trial involving allegations of a most unseemly pattern of uncivilized and perverted sexual acts between adults and their child and stepchildren, ages 1 and 5. Petitioner, Dutchess County Department of Social Services, seeks a determination finding T. G., born October 21,1982, to be an abused child pursuant to Family Court Act § 1012 (e). T. G. is the natural son of respondents.
*915 The petition, which was originated after a complaint was forwarded to petitioner by Effingham County, Georgia, Department of Family and Children’s Services, inter alia, alleged that, after a trial in Georgia, there had been an adjudication on August 2, 1984 in which a finding of sexual abuse was made against respondents with respect to the twin children (Hans and Christina) of respondent, Michelle G., born March 6, 1970 during her prior marriage.
The court notes that the Georgia determination was made in the context of a proceeding, commenced by the natural father of the two abused twin children, to terminate Michelle G.’s rights of visitation with them. The entire trial transcript of the Georgia proceeding, together with various exhibits, was introduced into evidence herein by consent.
FACTS
The allegations of sexual abuse upon which the instant application is based center around events which took place in the State of Georgia prior to respondents’ relocation to the State of New York. The transcript of the Georgia hearing reveals that respondents, together with certain of their friends, relatives, and neighbors, engaged in various sexual activities with the children which were characterized as “games”. These “games”, in which the twins and allegedly T. G. directly and actively participated, involved a wide variety of perverted and grotesque conduct, including acts of oral and anal sodomy, copulation, masturbation, and genital fondling. The children came to call intimate parts of their anatomy by various nicknames, and they came to view these orgies in which they participated as acceptable forms of behavior. Part of the basis for the findings here and in Georgia that respondents sexually abused the twins is the nature and detail of the consistent descriptions offered by the twins at a time when they were about to become a mere five years old. Christina fluently detailed and described how respondents each placed their mouths on her vagina, how Mr. G. ate ice cream from her vagina with a spoon, and how two neighbors, Christina called Big Jack and Big Jason, would engage in masturbation and how one would put his penis into or against her vagina from the rear as she stood on her knees whereupon one of them would ingest the “stuff out”. She also described how respondent, Mr. G., inserted a flower into her vagina and ate it, and how she also “rode his horse”.* She also revealed that a man licked her vagina while she would lie on her back. She recalled that baby T. G. cried when she and others “sucked on him,” and *916 that respondents participated. She stated that she became frightened when big boys sat on her face. She also asked why it was that her mother tasted “salty” and stated that when the ice cream was inserted in her vagina it felt cold. Much of this was corroborated by Hans.
This court’s assessment of the entire case includes a finding that these most sordid descriptions of the sexual “games” were not made-up tales. The truth of these statements is readily apparent because they evince proper orientation of the senses of sight, taste, and feeling, and the child’s reaction and description of pain and fear are appropriate to the conduct simultaneously experienced. Moreover, none of the statements of the children was disproved. In fact, as had been indicated by Christina, pornographic films were later found by the police at the home of respondents’ alleged participant-neighbors.
While the medical corroboration was very slight, the overwhelming opinion of those who spoke with, tested, or otherwise examined the children, including the court, was that the detail and consistency of their stories about the “games” they were made to play, in which their younger brother T. G. was included, were not of a character suggesting that the children’s versions of these activities were either induced, contrived, or imagined.
Respondents completely denied all of the allegations of abuse, and produced professional opinion testimony which this court rejects as evasive and without adequate factual basis.
STANDARD OF PROOF
Counsel for respondents has argued that the evidence submitted in support of petitioner’s case is inadequate when measured against any standard of proof. Furthermore, counsel suggests that petitioner has the burden of sustaining its case by clear and convincing evidence rather than by the preponderance standard set forth in Family Court Act § 1046 (b). Reliance for that proposition is placed primarily on Santosky v Kramer (455 US 745); Matter of Christina NN. (98 AD2d 894, 896); and Matter of Christine H. (114 Misc 2d 475).
The Santosky holding involved a proceeding for a permanent termination of parental rights based upon abuse. That court outlined a three-pronged test to determine whether the evidentiary standard adopted by a State met minimal constitutional due process requirements. That test involves a balancing of three factors: “the private interests affected by the proceeding; the risk of error created by the State’s chosen procedure; and the countervailing governmental interest supporting use of the *917 challenged procedure” (Santosky v Kramer, supra, p 754; see also, Addington v Texas, 441 US 418, 425; Mathews v Eldridge, 424 US 319, 335).
In a detailed analysis of the foregoing test in the context of a New York child abuse proceeding, the court in Matter of Christine H. (supra) concluded that the present statutory burden established in Family Court Act § 1046 (b) was inadequate to meet minimal due process requirements under Santosky (supra). That court felt that the right to avoid the stigma of a child abuse determination, the potential for criminal prosecution and the potential for permanent termination of parental rights together create a significant private interest. That court also pointed to the real potential for error in proceedings of this type, where heavy reliance is placed upon out-of-court hearsay statements of infants and in which the determinations are, in a sense, “ ‘calculated gambles based on careful but highly subjective predictions’ ” (Matter of Christine H., supra, p 481). Finally, the court concluded that the governmental interest in utilizing the less-stringent preponderance standard for both neglect and abuse cases was minimal.
While this court appreciates the concern which the Christine H. court exhibited in protecting the rights of the parents involved, this court most respectfully disagrees with the emphasis of that concern. Although it must be acknowledged that mistakes will inevitably be made — and this court does not minimize either the potential for error or the harm therefrom — parents, not defenseless children, must shoulder the burden of possible human imperfection. This court and its child protective procedures offer children their best and only protection. If a measure of gambling is unavoidably involved in these proceedings, it is preferable that the odds be with, rather than against, innocent children.
The design of Family Court Act article 10 proceedings is to intervene on behalf of a child who is incapable of protecting himself, and to aid adults to better understand and carry out their roles as parents (see, e.g., Family Ct Act §§ 1011, 1053, 1055 [c]). This court does not believe that the remedies available in these proceedings are nearly as intrusive as those in a permanent termination proceeding. (See also, Matter of Simpson, 126 Misc 2d 162, 165-168.) That distinction has been noted and suggested as an appropriate rationale for a continued adherence to the preponderance standard in neglect and abuse cases, not involving permanent termination of parental rights (Matter of Linda C., 86 AD2d 356, 357). As for the potential for criminal *918 prosecution against parents, that is not an adequate reason to increase the standard of proof in an article 10 proceeding. The two proceedings operate independently of each other, and neither Grand Juries, criminal courts, nor prosecutors are bound or legally influenced by the results of Family Court determinations.
In applying the three-pronged Santosky test, the Linda C. court gave considerable emphasis to the private interests of children when comparing them to the rights of their parents. (Matter of Linda C., supra, p 359.) As for its attitude toward the risk of error in favor of children, that court found the alternative risk in child abuse cases to approach a “level of absolute abhorrence” (supra, at p 360). Finally, the court in Linda C. viewed the State’s paramount interest in child protective proceedings to be the preservation of family bonds. It thus found that the application of a stricter standard of proof in these matters would frustrate the State’s ability to effectively keep the family unit intact (supra, at p 361; see also, Matter of Tammie Z., 105 AD2d 463).
In view of the foregoing, the court is constrained to respectfully disagree with the Matter of Christine H. holding, and elects to apply what is perceived as the more appropriate preponderance standard in determining the facts herein. The court stresses, however, that even if the stricter standard, viz., clear and convincing evidence, were to be applied, the proof would be entirely adequate.
PRIOR FINDINGS OF ABUSE AS EVIDENCE OF PRESENT DANGER
The next issue to be examined concerns respondents’ plaint that the within petition should be dismissed because it fails to allege that respondents’ past behavior has continued until today so as to pose an imminent threat to the well-being of their son. The cases cited by respondents to support that position have been reviewed. While each recognizes the need for some evidence beyond a prior finding of neglect or abuse of a sibling within the same household, the prevailing view adopts the philosophy explained in Matter of Anthony (81 Misc 2d 342,345). Noting that, as a general rule, prior instances of abuse by themselves would not necessarily reflect current conditions nor the existence of imminent peril, the Anthony court did state the following (p 345): “This court cannot entertain the callous or even casuistic hypothesis that it must await broken bone or shattered psyche before extending its protective cloak around this child pursuant to section 384 of the Social Services Law and *919 article 10 of the Family Court Act (Matter of Santos, 71 Misc 2d 789).”
The court agrees with the earlier finding of the Georgia court that in 1983 and/or 1984 both respondents subjected Mrs. G.’s twin children to the most grotesque and outrageous acts of mutual oral sodomy, anal and vaginal intercourse, masturbation, and other equally abasing forms of pedophilic degradation. Therefore, this court must unequivocally reject any argument that these parents are now somehow reliable simply because no new proof exists that they abused any other children for a year or more. Absent a showing that respondents have successfully undergone intensive, thorough, and long-range psychiatric or psychological treatment, this court will not betray the sacred trust it has been given by law to protect this baby from any similar risk of the kind of horror his twin half-siblings were forced to endure in the past. Only a miracle is likely to remove their scars, but this court now can and will keep this child shielded from any reasonable risk of such profane and vulgar defilement and exploitation by these respondents.
It is clearly the duty of a Family Court Judge to determine not only whether abuse presently exists, but whether, based on a record of past abuse or neglect, it is likely to be repeated. (See, e.g., Matter of Christina Maria C., 89 AD2d 855; Matter of Richard SS., 87 AD2d 915; Matter of Katherine J., 71 Misc 2d 47, 49; Matter of Edwards, 70 Misc 2d 858, 861-863; cf. Matter of Sais, 94 Misc 2d 40, 41-42.) As the court in Matter of Katherine J. (supra, at p 50) noted, “[t]he legislative intent here is clear to guard against a child not only whose physical, mental or emotional condition has been impaired, but ‘is in imminent danger of becoming impaired’. (Family Ct. Act, § 1012, subd. [f], par. [i].)”
“Experience has shown that a parent who abuses one of his children is likely to abuse his other children. This has become a rule of evidence in child protective proceedings.” (Matter of Edwards, supra, p 862.) “When the warning flags from the storms of abuse and neglect are still flying and there is a clear and present danger to children, the court must exercise its proper function in removing the other child from the home. (Schenck v. United States, 249 U. S. 47.)” (Supra, p 862.) When prior acts of abuse or neglect with respect to one child of the parties, by their very nature, manifest the parents’ faulty understanding of their basic duties and obligations, that prior finding will support a present determination of imminent danger to the parties’ other children (Matter of Christina Maria C., supra).
*920 It is this court’s view that when there has been a prior finding of neglect or abuse as to one child, and when the operative facts of that finding indicate that the parents have a perverted or grossly distorted perception of what conduct is consistent with their roles as parents, that prior finding — if of sufficiently recent vintage and even if virtually standing alone — should be considered sufficient to sustain a present finding of neglect as to other children of the parties. To hold otherwise would force a blameless child to return to a risk of a hell, whose existence no civilized society can abide.
NEED FOR CORROBORATION
Respondents have argued that in the absence of any corroboration of certain statements made by this child’s siblings, petitioner has failed to sustain its burden of proof. Respondents, citing Matter of Nicole S. (123 Misc 2d 364, 368), further assert that the standard of corroboration applied in criminal cases must also be utilized in child protective proceedings. That standard requires that there be evidence tending to confirm every essential element necessary to sustain an abuse or neglect petition.
Family Court Act § 1046 (a) (vi) provides:
“In any hearing under this article * * *
“previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact-finding of abuse or neglect” (emphasis added).
While certain statements were said to have been made by the twin half-siblings of T. G. wherein they detailed acts of sexual abuse with respect to T. G., it is not solely upon the truth of those hearsay statements that this matter stands or falls. If the only allegations of abuse or neglect were related to acts committed upon T. G., and had those statements been made to a social worker by T. G. at age two, the court might have been more disposed to accord respondents’ argument greater importance. There indeed are no statements by the infant T. G. being relied upon by this court for its decision herein. However, the mainstay of the petition in this matter is the prior finding of abuse in the State of Georgia based in part on the statements by the twins to the Judge therein. That finding in Georgia is one with which this court is in complete agreement after having reviewed the record. It is thus more than abundantly clear that the twins were grossly abused by these respondents. Indeed, of that there is no reason for doubt.
*921 Although the court in Matter of Nicole S. (supra) utilized what it perceived to be the appropriate standard for corroboration in child protective proceedings, that view appears to be well within the minority, and one which, this court would suggest, is inconsistent with the purpose and intent of the more relaxed rules of evidence established for article 10 proceedings. In Matter of Hawkins (76 Misc 2d 738, 740-741), the court, citing Matter of Lincoln v Lincoln (24 NY2d 270), indicated without specifically holding that the type of corroboration required in matters such as the one at bar may be less than sworn testimony in open court which tends to support out-of-court statements offered in evidence pursuant to section 1046 (a) (vi). This latter view is reinforced by the recent Third Department ruling in Matter of Cindy JJ. (105 AD2d 189, 191) in which the court pointedly rejected the need to apply the criminal standard of corroboration. The court reasoned that the potential for infringement on the liberty interest at stake in article 10 proceedings is far less than in criminal proceedings. As partial justification for its determination, the court alluded to the oft-stated proposition that the interests of the child must be safeguarded and considered paramount and superior to those of the parents. (For a helpful, recent review of this issue, see, Deutsch, Testimony by Children in Child-Abuse, Neglect Cases, NYLJ, Apr. 11,1985, p 1, col 3.)
FINDINGS
After examining the testimony and evidence presented in this proceeding and in view of the applicable standard of proof, the court finds the material submitted in support of the allegations of abuse against T. G. is insufficient. Certain out-of-court statements made by the siblings of that child were relayed to petitioner by the Georgia authorities. Beyond those bare, unfortified statements nothing of substance was presented to confirm that the abusive acts directed against T. G. actually took place. The Georgia decision, that T. G.’s parents have committed similar acts against Mrs. G.’s older twin children, standing alone, is insufficient to allow this court to find, as a matter of fact, that such abusive acts were performed against T. G. as well. The testimony and evidence before the Georgia court relating to the abuse of the two older children was more abundant and subjected to greater scrutiny than was the evidence of actual abuse, as to T. G., in the instant proceeding. The court emphasizes that it does not affirmatively find that the acts alleged did not occur, but merely that the proof thereof was insufficient to sustain petitioner’s burden regarding those allegations.
*922 However, the court does find that T. G. is a “neglected child” as that term is defined in Family Court Act § 1012 (f) (i) (B). Based upon the finding of actual abuse in the State of Georgia with respect to the other children of the respondent mother (a decision which has not been appealed), the extremely offensive and depraved nature of the abusive acts proven in the State of Georgia, and the testimony and evidence submitted to this court, it is apparent that respondents, at this time, cannot be relied upon to properly nurture, raise, or care for this child. The character of the prior abusive acts is such that returning T. G. to respondents at this time would create a very real, unnecessary, and imminent danger to his physical, mental, and emotional condition.
In view of the foregoing, respondents’ motion to dismiss made at the close of petitioner’s case is also denied as the court finds that a prima facie case of neglect was proven. Furthermore, the court notes that petitioner’s exhibits Nos. 4, 5 and 6 are not admitted into evidence and they have not been considered. Exhibit No. 3, the decision of the Georgia Superior Court (Cheatham, J.) dated August 2, 1984, is admitted over respondents’ objections regarding its alleged irrelevancy and its urged lack of controlling character on the case herein.
And, until this court is convinced that respondents are able to perform their fundamental duties as parents, T. G. will continue in petitioner’s care. Hopefully, following the dispositional hearing, respondents will cooperate in whatever program is established to the end that eventually the remedial intervention of this court in the parties’ lives will no longer be required. The dispositional hearing in this matter shall be scheduled for July 22, 1985, and respondents are hereby ordered to contact this court’s forensic team within five days of the date of this decision to make the necessary appointments for evaluations by a clinical social worker, testing and evaluations by a psychologist, and a psychiatric examination.
The order of this court, dated October 18, 1984, following the hearing held pursuant to Family Court Act § 1028 is hereby continued until further order.

 The nickname she used for a penis was “horse”.