OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
Five-year-old Keith R. wants to be a killer when he grows up. He states that he hates everyone, especially himself. In addition, two psychiatrists who examined Keith have concluded that he is an extremely disturbed child whose preoccupation with sexual matters is so intense as to suggest very strongly that he has been exposed *618 to unusual and explicit sexual conduct. While being interviewed by one of the psychiatrists, Keith manipulated two anatomically correct dolls to engage them in a parody of sexual intercourse, ending in shaking spasms. In addition, he licked the telephone receiver in a sensual manner. And, while riding a toy horse, he suddenly turned it over and asked “Is this a woman thing?” Finally, the child is extremely fluent in the vulgar, four-letter expressions of sexual concepts.
In this child protective proceeding initiated by the Commissioner of Social Services of the City of New York, it is alleged that Keith has been sexually abused, both orally and anally, by his brother and cousin. The respondent is Keith’s natural mother and the gravamen of the charge against her is that she allowed the child’s brother and cousin to have continued access to him despite his protestations of abuse.[2]
At the fact-finding hearing, no credible evidence was introduced to establish that the child had been sexually abused by anyone. Keith, himself, denied that any such act of abuse had ever taken place. And while the child had, at various times, made out-of-court assertions that he had been abused, he made similar out-of-court retractions of these assertions. Under all the circumstances, the court finds that the specific allegations of abuse contained in the petition have not been established. This, however, is not dispositive of the petition.
Prior to resting his case, the Assistant Corporation Counsel moved to conform the pleadings to proof, pursuant to subdivision (b) of section 1051 of the Family Court Act. The respondent’s attorney did not oppose the motion nor did he request additional time to prepare, something to which he would have been entitled under the statute. (Matter of Terry S, 55 AD2d 689.) The issue is, therefore, whether the respondent mother may properly be held accountable for her son’s present emotional condition.
*619 Section 1012 (subd [f], par [i], cl [B]) of the Family Court Act provides, in relevant part, that a child is neglected if his
“emotional condition has been impaired * * * as a result of the failure of his parent * * * to exercise a minimum degree of care
“(B) in providing the child with proper supervision or guardianship”.
Where a finding of neglect is predicated on impairment of the child’s emotional condition, the Legislature has required a showing that such impairment is “clearly attributable to the unwillingness or inability of the respondent to exercise a minimum degree of care toward the child.” (Family Ct Act, § 1012, subd [h].)
The burden of proof in all child protective proceedings is a fair preponderance of the credible evidence. (Family Ct Act, § 1046, subd [b]; Matter of Linda C., 86 AD2d 356.)[3] Is this general evidentiary rule modified in any way by the requirement that proof of a child’s emotional impairment be “clearly attributable” to parental neglect? The court concludes that it is not.
Initially, it is observed that the preponderance standard is set forth in clear, absolute terms as applicable at a “fact-finding hearing”. (Family Ct Act, § 1046, subd [b].) The latter phrase is defined as “a hearing to determine whether the child is an abused or neglected child as defined by this article.” (Family Ct Act, § 1044.) There is no stated exception for cases involving impairment of a child’s emotional condition.
In Matter of Linda C. (supra), the Appellate Division commented on the practical necessity of the preponderance of evidence test in child protective proceedings. The court stated (p 360): “Thus, the risk of an erroneous fact finding in favor of the parent would be substantially enhanced by imposing a stricter standard of proof. A court should be extremely hesitant in bringing this about in child protective proceedings.” In light of the foregoing, this court holds *620 that the language of subdivision (h) of section 1012 of the Family Court Act should be read as imposing a commonsense caveat on the fact finder in cases where impairment of a child’s emotional condition is alleged. Thus, because of the uncertainties surrounding the origins of mental or emotional impairment, the court must not hold a parent accountable on mere speculation. The causal relationship between the parent’s action or inaction and the child’s emotional impairment must be established. This does not, however, change the quantum of proof required to sustain a finding of neglect or abuse.
In furtherance of this principle, the Legislature has established two evidentiary provisions that are applicable to cases such as this. Accordingly, impairment of a child’s mental or emotional condition may be established by “competent opinion or expert testimony”. (Family Ct Act, § 1046, subd [a], par [viii].) In addition, section 1046 (subd [a], par [ii]) of the Family Court Act establishes the concept of res ipsa loquitur in child protective proceedings. Thus, “proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent * * * shall be prima facie evidence of child abuse or neglect”. Every reported decision that the court has found construing this section involved physical injuries sustained by the child. Typical are cases such as Matter of Cynthia V. (94 AD2d 773); Matter of Tashyne L. (53 AD2d 629); Matter of Rose B. (79 AD2d 1044); and Matter of Tonita R. (74 AD2d 830).
Nevertheless, a plain reading of the statute leads to the conclusion that it is also applicable where the “condition of [the] child” is one of mental or emotional impairment that would not otherwise exist except by reason of parental neglect. The statute clearly specifies both “injuries sustained” and a “condition” that would ordinarily not “exist”. Moreover, the applicability of the section to instances of emotional impairment is perfectly consistent with the rationale of case law that has developed in instances of unexplained physical injuries.
Parents are responsible, in the first instance, for the welfare of their children. They are, and. must be held to be, *621 the first line of defense against injury and impairment. The right of parents to raise their children and control their upbringing is fundamental and entitled to protection as a matter of constitutional law. (Matter of Bennett v Jeffreys, 40 NY2d 543; Wisconsin v Yoder, 406 US 205; Pierce v Society of Sisters, 268 US 510.) The corollary to that right is the responsibility of the parent to safeguard the child. And where parents fail to meet that responsibility, the State may properly intervene to protect the child. (Family Ct Act, § 1011.)
In the instant case, the respondent mother was the primary caretaker at the time when the child exhibited exceedingly troubled behavior. His vocabulary of common obscenity came from somewhere. His extreme preoccupation with explicit and even deviant sexual conduct was learned someplace. His hatred of everyone and everything was obtained somehow. All of this is not to say that the mother is necessarily the source of these problems. And yet, in terms of the child’s emotional impairment, it hardly matters whether the mother tutored him in deviant behavior and attitudes or whether she allowed these traits to be inculcated by an environment over which she was required to exercise control.
Accordingly, as his mother and primary custodian, the respondent mother must be held to explain Keith’s emotional condition and her response thereto. This she has failed to do.[4] And, therefore, on the facts of this case, the child’s emotional impairment while in the mother’s custody speaks for itself and a finding of neglect is mandated. (Matter of Tashyne L., supra.)
The Family Court clinic is directed to prepare a full diagnostic report in aid of disposition. Similarly, the Probation Department is ordered to conduct a thorough investigation and report to the court. The child is continued on remand to the Commissioner of Social Services pending a dispositional hearing which is set down for May 23, 1984.

. The petition is very poorly drafted. At the top, the phrase “neglect petition” appears. Directly below is the single word “abuse”. The body of the petition, including the wherefore clause is couched in terms of neglect. At the same time, the allegations as recited would, if true, constitute abuse. A serious due process question of adequate notice is averted only by reason of the fact that the court finds that neglect, and not abuse, has been established.

. The court is aware of the opinion of the Family Court — Queens County, in Matter of Christine H. (114 Misc 2d 475), applying the clear and convincing evidence test to child abuse proceedings. This court respectfully disagrees with this holding for the reasons stated in Matter of Linda C. (86 AD2d 356.)

. In addition to the res ipsa loquitur principle, the court notes that additional, direct testimony was offered to establish that the mother was gay and allowed the child to witness her in bed with her girlfriend. The mother also conceded to others that her lifestyle was having an adverse effect upon the child.