In the Matter of VALERIE LEONICE T., and Another, Children Alleged to be Neglected. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant; JOYCE T., Respondent.

First Department, March 26, 1985

### APPEARANCES OF COUNSEL

*Helen P. Brown* of counsel (*June A. Witterschein* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*John F. Clennan* of counsel (*Anthony Philip Moncayo* with him on the brief; *Clennan & Moncayo,* attorneys), for respondent.

*Mary A. Clark* of counsel (*Lenore Gittis,* attorney and *Law Guardian*), for children.

### OPINION OF THE COURT

Per Curiam.

This child protective proceeding was commenced on June 17, 1983, pursuant to Family Court Act article 10. The neglect petition was filed one week after the police had responded to a neighbor's call of a child beating, whereupon it was ascertained that the child, Valerie T., had multiple bruises, welts and

lacerations. The hospital record, almost 50 pages in length, is replete with gross references that there were "multiple bruises all over body," both old and fresh injuries, cigarette burns and belt buckle marks. Valerie, who was approximately five years of age at that time, also disclosed that she had been previously raped by her uncle, Eugene S. The mother, Joyce P., was arrested for endangering the welfare of a minor and, after pleading guilty, was sentenced to probation. Although she initially admitted that she had hit the child with a belt, she later denied it, claiming that the injuries were self-inflicted and, subsequently, she stated that she only hit the child with the cloth part of the belt.

It appears that the mother has had a long history of psychiatric problems, having been in foster care almost since birth. At the age of 15, while she was living with her mother, she was sexually abused by her mother's boyfriend, resulting in the birth of Valerie on June 20, 1978. Her other child, Monique M., was born on July 5, 1982. At the time of these events, Joyce was employed as a typist and, to save the expense of babysitters, she had asked Eugene, her brother, to stay with the children while she was at work. It is alleged that, between April and June 1983, Eugene repeatedly sodomized Valerie, who, although afraid to tell her mother, did tell a neighbor's son, whose mother told Joyce what had occurred. Joyce did not report this to the police but claims she did attempt to comfort the child.

A fact-finding hearing was held on December 21, 1983, where the court, over the objection of both the Assistant Corporation Counsel and the Law Guardian, accepted an admission of neglect by the mother that she had hit the child on the arm with a cloth belt, but not with the belt buckle. The court did not allow any other evidence on the issue of abuse or neglect. Subsequently, a dispositional hearing was held, at which a staff psychiatrist, with the Family Court Mental Health Services, testified that Valerie was fearful of her mother, had refused any visitation with her and was not interested in returning to her custody. It was recommended that the child be continued in foster care and receive psychiatric treatment with limited supervised visitation. A psychological evaluation disclosed that the child was emotionally traumatized as a result of the mother's physical and verbal abuse and that returning the child to the mother would, in all likelihood, lead to further abuse in the future.

In the face of this overwhelming evidence and recommendation that the child continue in foster care, the Family Court,

nevertheless, concluded that petitioner had not met its burden "in establishing that the child Valerie would fair [sic] better in continued foster care." Concluding that individual psychotherapy was needed for both the mother and the child, the court placed both children with the Commissioner for 18 months, with the direction that the children reside with the mother, subject to certain conditions, namely, that she was to cooperate in participating in a counseling and therapy program. An order of protection was issued, precluding any contact between the children and Eugene.

We find inadequate support in the record to sustain the disposition of the Family Court, taking into account the gross charges of extreme neglect and abuse on the part of the mother and the overwhelming proof that the child should continue in foster care under the custody of the Commissioner. The decision permitting the child to reside with the mother did not give sufficient consideration to the opinions offered at the hearing as to the substantial risk of future abuse. Clearly, the paramount concerns are the best interests and welfare of the child, which required the court to take into account the potential threat to the child's health and safety. The court is duty-bound, not only to determine whether there has been neglect or abuse, but also the likelihood of this conduct in the future (*Matter of Charmine W.*, 61 AD2d 769, 770). Here, the court did not fulfill that responsibility.

In child protective proceedings, the Commissioner has the burden of establishing abuse and neglect by a preponderance of the evidence (Family Ct Act § 1046 [b]). The statute provides that "proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect" (Family Ct Act § 1046 [a] [ii]). Upon proof to establish a prima facie case, the respondent must offer a satisfactory explanation to rebut the evidence of neglect (*Matter of Cynthia V.*, 94 AD2d 773; *Matter of Faith Z.*, 92 AD2d 990; *Matter of Tashyne L.*, 53 AD2d 629, 629-630). In rendering its decision, the court must set forth the specific grounds for its finding that the child had been abused or neglected (Family Ct Act § 1051; *Matter of Tashyne L., supra*).

We agree that the trial court abused its discretion in failing to hold a full fact-finding hearing and by accepting, in lieu thereof, the mother's admission of neglect. This was error and was compounded by the court's finding that "the petitioner has not

met its burden of proof in establishing that the child Valerie would fair [*sic*] better in continued foster care." We fail to perceive any basis for this finding or the conclusion that "continued separation [was not] in the best interest of this child and the mother." The court terminated the hearing in the face of a hospital record demonstrating clear evidence of physical and sexual abuse, sufficient to conclude that the child's continuing to reside with the mother may pose a real danger in the future. Nor did the court state the grounds for its finding of neglect, as required (Family Ct Act § 1051).

Therefore, we remand the matter for a de novo fact-finding and dispositional hearing before a different judge.

Accordingly, the orders (two papers), Family Court, Bronx County (Frank Torres, J.), each entered September 20, 1984, *inter alia,* removing the child Valerie T. from foster care and placing her in the custody of the Commissioner of Social Services, with a direction that the child reside with respondent mother, should be reversed, on the law and the facts, without costs or disbursements, and the matter remanded for new fact-finding and dispositional hearings to be held before another Judge of the Family Court.

SANDLER, J. P., SULLIVAN, MILONAS and KASSAL, JJ., concur.

Orders, Family Court of the State of New York, Bronx County, both entered on September 20, 1984 unanimously reversed, on the law and the facts, without costs and without disbursements, and the matter remanded for new fact-finding and dispositional hearings to be held before another Judge of the Family Court.