In the Matter of SHARNETTA N. and Others, Children Alleged to be Abused and Neglected. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant; DIANE L. et al., Respondents.

First Department, December 4, 1986

## APPEARANCES OF COUNSEL

*Barry P. Schwartz* of counsel *(Fay Leoussis* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Julian A. Hertz* for respondents.

*Mary A. Clark* of counsel *(Lenore Gittis, Law Guardian),* for Sharnetta N.

*Elfreda G. Brownstein, Law Guardian,* for Twana L. and another.

## OPINION OF THE COURT

FEIN, J. P.

On October 18, 1985, the Commissioner of Social Services of the City of New York (Commissioner) filed a petition against respondents Diane L. and Collins N., Sr., alleging that they had abused and neglected their children Sharnetta N. (age 7), Twana L. (age 10) and Collins N. (age 5 months). The petition alleged the following:

"(a) On 10/16/85 school personnell *[sic]* called in a report of suspected child abuse when the child SHARNETTA appeared in school with bruises on the neck and face, which the child stated occurred when the mother banged her head against the wall.

"(b) A quick examinastion *[sic]* by the undersigned revealed a lump and scab on the upper left side of the head.

"(c) Although aware of the respondent mother's propensity for inflicting corporal punishment upon the child, SHARNETTA, respondent Collins [N., Sr.] has failed to protect this child.

"(d) As a result of the above, the children TWANA and COLLINS are in danger of becoming abused or neglected children."

After the petition was filed, Sharnetta was remanded to the custody of the Commissioner and placed in a foster home, while Twana and Collins remained on parole with their parents. At the fact-finding hearing in February 1986 there was

testimony by Sharnetta's guidance counselor, two of her former special education teachers, a representative from the placement agency and Sharnetta's mother. The testimony revealed that in October 1985 Sharnetta complained to her teacher that her head and face hurt. An examination revealed a bump on her head, a faded black and blue mark on her face and a scratch on her neck. She stated that her mother had banged her head against the wall and had hit her with a belt. Efforts to contact the mother were unsuccessful. It further appeared that Sharnetta had psychological problems, that she was "very unrelated" and demonstrated that she was very fearful of things, evidencing her fear by screaming things like "I'm scared, I'm afraid * * * a water bug is going to get me * * * baby is crying". Efforts to have her parents take her for psychiatric treatment failed. Letters to her father, referring the child to the Committee on the Handicapped and to Lincoln Hospital, were not followed up. The parents declined or failed to come to school to discuss her problems. Letters were ignored.

There was further testimony that in responding to inquiry as to how she had sustained her injuries, Sharnetta stated that "Mommy hurt me—I'm going to get into trouble." Although this was treated by the Family Court Judge as an isolated incident, there was testimony that Sharnetta often spoke of being afraid and fearful of getting into trouble.

There was additional testimony that in March 1985 Sharnetta complained that her neck hurt. Upon pulling away the turtleneck of Sharnetta's sweater, the special education teacher and her supervisor observed a large red mark on Sharnetta's neck which extended to her chest area, evidencing the child's pain. Sharnetta stated several times that "Daddy hurt me". She did not say how. She stated that her father had placed alcohol on the irritated area. A note was sent to the parents, advising of the injury and requesting that Sharnetta get medical attention. There was no response. Sharnetta would tell other children to "shut up, I'm frightened. She is going to hurt me."

The agency's evaluation of Sharnetta, which contained psychological and medical reports of tests performed shortly after her placement with the agency, was excluded over objection by Sharnetta's Law Guardian.

After the Family Court Judge denied the parents' motion to dismiss, Sharnetta's mother testified that Sharnetta "got unra-

tional, and she started falling herself all over the floor. So me —and, you know—I be trying to tell Sharnetta, what is your problem by me. I tried to pick her up, and I accidently *[sic]* scratched her on the neck. With the bump on the head, how she got that on the head—I have a floor model color T.V., and Sharnetta was turning, and she accidently *[sic]* bumped the head. I don't know—That's when she said to me—Mommy, Mommy, and she bleeding, and I got excited when I seen it— the blood and then I tooks her to the bathroom and put the cold water on the head. That's how she got the cut on top of the head—from the knob on the T.V."

In summary, the mother claimed that the injury was a cut from the edge of the T.V. and that the scratches had been caused by the mother's excessively long nails when she picked Sharnetta up. When questioned about the statement by Twana, Sharnetta's older sister, that Sharnetta struck her head on the T.V. because she was being beaten with a belt, the mother denied that she beat her children. She stated that she "pops them" on the hand with a belt. She claimed that her children had no bruises on their bodies and that her husband never hit them. She denied that the school had contacted her about this incident or about Sharnetta's conduct. However, she did state that she had informed the teacher in 1985 that she could not go to school to discuss Sharnetta because she was pregnant.

At the conclusion of the evidence, Sharnetta's Law Guardian moved to conform the pleadings to the proof, to allege the parents' failure to cooperate with the school in seeing that Sharnetta obtained appropriate psychiatric treatment and medical tests. Although there was no objection, the Family Court Judge denied the motion, stating that Sharnetta's special needs were not identified, that the claims were not supported by qualified personnel, and that there was insufficient evidence that the parents failed to follow through on any requests. The court also found that the October incident was an accident, an isolated incident, and that the mother was more credible than her daughter. In the absence of a continued course of action or a determination of physical abuse or excessive corporal punishment, the petition was dismissed.

In our view, the court erred in dismissing the child protective proceedings against the parents. There was sufficient evidence that the parents inflicted physical injuries on Sharnetta on several occasions which left her inordinately fearful. As stated in Family Court Act § 1011, the purpose of a child

protective proceeding is "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being." The paramount concerns in such a proceeding are the best interests and welfare of the child (*Matter of Valerie Leonice T.,* 107 AD2d 327, 329). It is the duty of the Family Court to determine whether the child has been abused or neglected, and whether there is a substantial risk that the child will be abused or neglected or is in imminent danger of being abused or neglected in the future (Family Ct Act § 1012 [e] [ii]; § 1012 [f] [i]; *Matter of Valerie Leonice T., supra*). A finding of abuse or neglect need only be based upon a preponderance of the evidence (Family Ct Act § 1046 [b] [i]).

Although there is some question whether the statutory standard meets constitutional requirements, we need not concern ourselves with this issue here. This is not a proceeding to terminate parental rights. Moreover, the evidence here is "clear and convincing" (*cf. Santosky v Kramer,* 455 US 745; *Matter of Linda C.,* 86 AD2d 356; *Matter of Christine H.,* 114 Misc 2d 475; *Matter of Keith R.,* 123 Misc 2d 617; *see,* Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1046, pp 388-389). In denying respondents' motion to dismiss, the Family Court correctly found that a prima facie case of neglect had been established and that it became incumbent upon the parents to explain the source of the injuries (*Matter of Valerie Leonice T., supra*). The evidence as to the injuries to Sharnetta stands undisputed. The father did not testify, and the mother's explanation hardly rings true. The Family Court Judge erred in treating the October injury as an isolated incident, and in ignoring the prior injury and the other testimony of neglect (*Matter of Cerda,* 114 AD2d 795, 796). A pattern of neglect and improper supervision may be found from the two unrelated instances occurring within a limited period of time (*Matter of Fred S.,* 66 Misc 2d 683). The evidence of Sharnetta's injuries demonstrated extensive corporal punishment and was sufficient at least for a finding of neglect (*Matter of Iris C.,* 46 AD2d 910). The evidence demonstrated that Sharnetta was injured and fearful and presented a "condition * * * of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions" of her parents (Family Ct Act § 1046 [a] [ii]).

The mother's account as to one of Sharnetta's injuries did not fulfill the obligation to present a satisfactory explanation

to rebut the prima facie showing of neglect *(Matter of Tashyne L.,* 53 AD2d 629). The black and blue marks found on Sharnetta's face were clear evidence of a belt mark, contrary to the mother's testimony that she used a belt only to hit her children on their hands. Sharnetta's statements to the teachers and guidance counselors tended to support their in-court statements which were rejected by the Family Court *(Matter of Tonita R.,* 74 AD2d 830). The evidence was at least sufficient to establish that Sharnetta was neglected.

The denial of the unopposed motion to conform the pleadings to the proof, in order to establish that the parents had seriously neglected Sharnetta's emotional and psychological needs, was improper and constituted an abuse of discretion as a matter of law (Family Ct Act § 1051 [b]; *see, Matter of Keith R., supra).* There was sufficient evidence that the parents did not follow up on requests from the appropriate school personnel, who were qualified to the extent necessary to support their testimony. Although they were not psychiatrists or psychologists, they had sufficient training and education to warrant their conclusion that Sharnetta was in need of psychiatric help. Moreover, the court was empowered to conform the pleadings to the proof on its own motion (Family Ct Act § 1051 [b]).

The Family Court also erred in denying admission of the agency evaluations pertaining to Sharnetta's emotional and physical condition and special needs *(cf.* Family Ct Act § 1046 [b] [ii]). The exclusion on the ground that the evaluations had been made after the case began disregarded the statute which makes admissible at a fact-finding hearing documentary evidence which is "competent, material and relevant" and is supported by a certification by the head or a responsible employee of the agency as being "the full and complete record of said condition, act, transaction, occurrence or event", made by the agency in the normal course of business within a reasonable time thereafter (Family Ct Act § 1046 [a] [iv]). The medical examination made upon Sharnetta's admission to foster care revealed that she had scars all over her body and that her fingers were burned with matches. There was a finding of significant physical, emotional and possible sexual abuse. The evaluation bore directly on the issues of physical and emotional neglect and were not, so far as appears, prepared after the case began *(see,* Family Ct Act § 1047 [b]; Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1047, p 401 *et seq.).*

Accordingly, the order dismissing the petition should be reversed, a finding of neglect as to Sharnetta should be entered, and the matter remanded for a dispositional hearing. This court's order continuing the prior placement of Sharnetta, pending appeal, should be extended pending the outcome of the dispositional proceedings.

With respect to Twana and Collins, there was no error in dismissing the petitions. Although there are cases holding that a finding of neglect or abuse as to one child is admissible on similar issues as to that child's siblings, the evidence here is clearly sufficient to distinguish Sharnetta's condition from that of her siblings (*Matter of Christina Marie C.,* 89 AD2d 855; *Matter of Cruz,* 121 AD2d 901).

There is no evidence in the record showing abuse or neglect of the siblings.

Accordingly, the order of Family Court, Bronx County (Donald F. Mohr, J.), dated February 28, 1986, which, after a fact-finding hearing, dismissed the petition filed by the Commissioner which had alleged that Sharnetta N., Twana L. and Collins N. are abused and neglected children under Family Court Act article 10, should be reversed, on the law and the facts, to find neglect as to Sharnetta, and the action remanded to the Family Court for a dispositional hearing as to Sharnetta, without costs. The order should be affirmed as to Twana and Collins, without costs. The stay order of Justice Rosenberger of this court, dated March 5, 1986, continuing the placement of Sharnetta, should be extended pending the outcome of the dispositional hearing.

MILONAS, ROSENBERGER, ELLERIN and WALLACH, JJ., concur.

Order, Family Court of the State of New York, Bronx County, entered on or about February 28, 1986, unanimously reversed, on the law and the facts, to find neglect as to Sharnetta, and the action remanded to the Family Court for a dispositional hearing as to Sharnetta, without costs and without disbursements. The order is affirmed as to Twana and Collins, without costs and without disbursements. The stay order of Justice Rosenberger of this court dated March 5, 1986, continuing the placement of Sharnetta, is extended pending the outcome of the dispositional hearing.