In the Matter of TANIA J., a Child Alleged to be Abused. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant, v ESTHER J., Respondent, et al., Respondent.

First Department, June 15, 1989

## APPEARANCES OF COUNSEL

*Jean Brandon* of counsel *(Edward F. X. Hart* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for appellant.

*Joan Iacono* of counsel *(Jacoby & Meyers,* attorneys), for respondent.

*Stacy Wolf* of counsel *(Lenore Gittis,* attorney), *Law Guardian,* for Tania, J.

## OPINION OF THE COURT

SULLIVAN, J.

Petitioner, the Commissioner of Social Services of the City of New York, appeals from a Family Court order which dismissed child protective proceedings filed against respondent Esther J. for failure to establish by a preponderance of the evidence that she had abused her daughter, Tania, by allowing her live-in boyfriend, respondent Arthur Leon Little, to abuse the child sexually. Petitioner contends that the Family Court, which found that the child had, in fact, been sexually abused, erred in failing to credit Tania's out-of-court statements that her mother knew of the abuse and did nothing to protect her, while crediting other of her out-of-court statements that Little had abused her.

The Family Court petition alleged that eight-year-old Tania was, pursuant to Family Court Act § 1012, a sexually abused and neglected child whose mother and "stepfather", Little, "committed or allowed to be committed a sex offense" against her. Specifically, it was alleged that Tania was diagnosed in April 1986 as having gonorrhea, and 13 months later, after complaining that Little "had been touching her vaginal area", found to have rectal and vaginal abnormalities. The petition further alleged that the mother, despite her knowledge of Little's conduct, failed to protect the child.

At the fact-finding hearing, Dr. Leylegian, a senior resident in the emergency room at North Central Bronx Hospital, testified that she had, on May 28, 1987, in the presence of Ms. Gonzalez, a social worker, and Ms. Harrison, a registered nurse and member of the child protection team, performed a head-to-toe physical examination of Tania, which disclosed several abnormal findings, including an anal fissure or tear, an anal tag, or extra piece of tissue around the anus, and a

synechia, or chronic scar, between the hymenal ring and the labia minora.

According to Dr. Leylegian, the anal tag and the synechia could only have resulted from chronic digital or penile penetration. Dr. Leylegian believed it highly unlikely that the abnormalities could have been either self-inflicted or caused accidentally. Rather, she explained, such injuries were most often the result of chronic sexual abuse. Based on these findings, as well as Tania's statement that Little had been "hitting her and touching her approximately eight times a week * * * in her vagina and her butt", Dr. Leylegian concluded that Tania had been sexually abused.

Ms. Ruiz, a counselor at Victim Services Agency, to whom Tania and her family had been referred, met with Tania, her mother and Little on March 17, 1987, and thereafter had approximately 30 weekly counselling sessions with Tania alone. On May 18, after two months of counselling, Tania admitted that Little tounched her vagina and other private parts while she was taking a bath or in bed. The following week, Tania reiterated her account, this time adding that Little would usually touch her on Thursday nights when her mother was away at work. Tania stated that she had told her mother, who said that "she was going to take care of it." Little, however, continued to touch her, as recently as the Thursday before the May 21 session with Ms. Ruiz.

Dr. Meltzer, an expert in the field of child sexual abuse, testified that in October 1987 she performed psychological examinations of Tania, who told her that one night at the beginning of second grade, while her mother was at work, Little came to her bed, pulled her nightgown up and touched her on her buttocks and vagina. Although Tania recanted this accusation during that same examination, she recalled how she had been taken to a hospital where, after an examination, "they believed her". Tania told Dr. Meltzer that her mother had instructed her to tell the Judge that the incident never happened, and that if she did, they would all go away together on a trip.

In Dr. Meltzer's opinion, Tania's statements as to what happened to her sexually were genuine. She had spoken about the matter spontaneously and had provided peripheral details, such as the time of year and day of occurrence, the clothes she was wearing, and Little's actions initially in approaching her, and subsequently, all of which validated her account. Dr.

Meltzer opined that he did not have any reason to believe that Tania was fabricating. She did not display any hostility toward Little, and, in fact, wanted to return home to him and her mother. Any feelings of fear and sadness on her part, Dr. Meltzer believed, were typical of children who have been abused. Her recantation was also "very typical". In fact, Dr. Meltzer suspected that, far from lying about the incident, Tania was withholding information during her examination, and that there may have been other incidents of sexual abuse as well. Dr. Meltzer testified that she believed that by the time of her examination five months after the incident, Tania was already under pressure to recant her story and was upset about the consequences of having disclosed it.

Medical records from Martin Luther King, Jr. Health Center indicated that specimens taken from Tania on April 10, 1986 were positive for gonorrhea of the rectum, cervix and pharynx. North Central Bronx Hospital records refer repeatedly to conversations with the mother concerning Tania's condition. They indicate that on May 28, 1987, at the time of Dr. Leylegian's examination, Tania stated that she "was touched by her stepfather (and hit by. him) approximately 8 times last week in 'her bajima and her butt * * *'. [Tania] states her stepfather entered her bedroom at night before bedtime and touched her at that time. [Tania] also states she told her mother about her stepfather's touching her, and one night the mother 'pulled him (the stepfather) off of [her].' " That account is reiterated in the social work note signed by Ms. Gonzalez, who noted that Tania stated that "Leon comes into my room at night and hit my vagina." Ms. Gonzalez further noted Tania's statement that "one time my mother came in the room and pulled him off me," adding, "[c]hild states she told mother that Leon had been touching her and mom said she would make him stop. Child appeared frightened, withdrawn." A further note in the triage evaluation form signed by C. Kagan, RN, indicates, "Mother states that child said her stepfather 'touched her'."

In her own testimony the mother denied that Tania had ever told her that Little was sexually abusing her. The only time that she heard about any such incidents prior to the instant case was when a representative from Social Services for Children (SSC) informed her that Tania had told her counselor, Ms. Ruiz, that Little had "touched" her. She admitted, however, that her hours of employment were rotated, and

that when she had the night shift, Tania would stay either at home with Little or at her grandmother's home.

The mother further testified that at the time Tania was discovered to have gonorrhea in April 1986, both she and Little were tested and that the tests proved negative. She admitted, however, that, prior to the testing she and Little underwent in April of 1986, neither of them had ever been tested for the disease.

The mother admitted that although she suspected someone had done "something" to Tania because she had contracted gonorrhea, she did not attempt to seek counselling for almost a year. Nor did she, on June 1, 1987, when she was informed that Tania had physical signs of sexual abuse, ever contact any of the doctors who had examined Tania to learn more about their findings.

Little also testified. Although conceding that Tania was an honest child, more likely than not to tell the truth, he denied ever touching her in a sexual manner. His cousin, Mary Carter, testified that after the May 1987 hospital finding and the resulting petition, she asked Tania if anyone touched her and that Tania said no. Ms. Carter also testified that on another occasion she overheard Tania deny to her mother that anyone had touched her.

The Family Court found, based on the testimony of Ms. Ruiz and Dr. Meltzer, as corroborated by the physical findings, that the child was sexually abused. While making a finding of abuse as to Little, it found that the mother's actions towards Tania were appropriate, noting that when she became aware of the child's condition in April 1986 she promptly took her to a clinic and also had herself and Little tested. Finally, the court held that petitioner had failed to prove that the mother had any knowledge that Little had sexually abused Tania or that she failed to protect the child. In our opinion, the evidence, reasonably viewed, yields a different conclusion, and, accordingly, we reverse.

Family Court Act § 1012 (e) (iii) defines an "abused child" as one under 18 years of age "whose parent or other person legally responsible for his care * * * commits, or allows to be committed, a sex offense against such child". A "neglected child" is defined in section 1012 (f) (i) (B) as a child less than 18 years of age "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other

person legally responsible for his care to exercise a minimum degree of care * * * by * * * allowing to be inflicted harm".

In the instant case, the mother was charged with abuse and neglect in that, with knowledge thereof, she permitted Little's sexual abuse of Tania to continue. The charge was based upon the April 1986 diagnosis that Tania had gonorrhea, that no one but Little had access to her prior to that time, that Tania stated to at least three health care workers that she informed her mother of Little's sexual abuse and that her mother told her she would make him stop, yet did nothing to protect her, and that on one occasion the mother walked into the room and actually had to pull Little off Tania.

Family Court credited Tania's out-of-court statements to her counselor, Ms. Ruiz, to the psychologist, Dr. Meltzer, and to the team that examined her at North Central Bronx Hospital as to Little's sexual abuse of her. It did so despite Little's sworn denial that he ever touched her, and Ms. Ruiz's testimony that Little had cooperated in attending the first therapy session along with Tania and her mother. In doing so, it implicitly recognized that Tania's subsequent recantations of her account did not discredit her but was, instead, a common reaction among abused children, resulting, in this case, from Tania's fear of getting herself and Little into trouble, as well as from her desire to leave the custody of her disliked paternal grandmother and return home.

Yet, when it came to Tania's statements that she had told her mother about the abuse, a seemingly natural thing for a child to do, that her mother promised to protect her, and that her mother once walked in and pulled Little off her, the court inexplicably drew the line and rejected that part of her account. The court never furnished a rationale as to why those statements were less credible than the statements that the abuse occurred. Moreover, it ignored Tania's crucial statement to Dr. Meltzer that her mother told her not to tell the court what happened, and that if she denied that any incident occurred with Little, they would all take a trip together.

Instead, the court focused on the mother's purported initial action in taking Tania to the hospital as evidence of appropriate parental behavior, ignoring the fact that no medical records were submitted to support the mother's testimony that she, in fact, did take Tania to Jacobi Hospital, where she claimed that nothing was found amiss, and overlooking the fact that it was not the mother but the paternal grandmother

who, during a weekend visit, first took the child to the medical center where the gonorrhea diagnosis was made in April 1986. And, although the mother testified that she suspected that Tania had been sexually abused after the gonorrhea diagnosis was made, she did not, despite her financial ability to do so, make any attempt to change Tania's school or to provide therapy for her between April 1986 and March 1987, when the SSC therapy sessions commenced. Nor did she make any attempt to limit Tania's contact with those who might have been responsible for the abuse, most notably Little, who was alone with Tania on those nights when the mother worked.

In fact, the mother did absolutely nothing to protect her child during this period. She would not have taken Tania to North Central in the first instance but for the SSC worker's insistence. Most significantly, even after Dr. Leylegian found evidence of sexual abuse, the mother refused to believe that Tania had been abused. Her inability or unwillingness to deal with the harm that had befallen her child is further underscored by her failure to ask the doctor at North Central about the results of the examination, either during the exam, at which she was present, or after she had been officially notified that she could not remove Tania from the grandmother's custody.

A preponderance of the evidence in this case established that the mother knew or should have known of the abuse. Her testimony that Tania's story should be discredited because the child misunderstood anatomical terminology is nothing more than a clumsy attempt to explain away her own failure to act. Ms. Ruiz, 1 of the 2 witnesses upon whose testimony the court relied heavily in finding that Little had abused Tania, effectively refuted this explanation by testifying that Tania, in disclosing the details of her abuse during a counselling session, correctly pointed to her vagina when asked where that part of her body was located.

In finding "no basis to believe that the mother failed to protect her child", the court, after weighing the mother's sworn testimony and "consistent behavior", refused to credit Tania's statements concerning her mother's knowledge of the abuse, although, as noted, it did credit all of her out-of-court statements relating to the abuse and the identity of the perpetrator. Irrespective of whether the court meant that it did not believe that the mother had knowledge of the abuse, or that it believed the mother behaved appropriately to protect the child, it misapplied the law. The incontrovertible fact

is that the child contracted gonorrhea for which neither the mother nor Little could offer an explanation. Quite obviously, the mother did, in fact, fail to protect her child, because Tania was found to be abused in May 1987, one year after she was discovered to have contracted gonorrhea. A 7- or 8-year-old child does not contract gonorrhea or develop physical signs of chronic trauma to the vaginal and rectal areas unless the child has been sexually abused.

Moreover, proof that Tania suffered from these conditions while in the custody of the mother was in and of itself sufficient to establish a prima facie case of abuse and neglect against her. (Family Ct Act § 1046 [a] [ii]; § 1012 [e] [iii]; [f] [i] [B]; *Matter of Cynthia V.,* 94 AD2d 773.) "[P]roof of injuries sustained by a child which would ordinarily not be sustained or exist except by reasons of the acts or omissions of the parent shall be prima facie evidence of child abuse or neglect". *(Matter of James P.,* 137 AD2d 461, 462.) After the petitioner has made a prima facie showing the burden shifts to the parent to offer a satisfactory explanation to rebut the evidence of abuse. *(Supra,* at 462, citing *Matter of Sharnetta N.,* 120 AD2d 276, 280-281.)

Thus, even if the evidence were insufficient to support a finding that the mother had actual knowledge of the abuse, petitioner sustained its burden of proof in making out a case of abuse and neglect against her. She knew that Little was the only male to have access to Tania during the period prior to April 1986. She must have realized from Tania's rapid recovery that Little's negative test results for gonorrhea did not prove that he did not have the disease at the critical time period, but only that he had been cured by the time of the test. Therefore, the mother should have known that her child had been harmed and was at imminent risk of being further harmed. In any event, we find ample proof in this record that the mother had actual knowledge that Little was sexually abusing Tania. Her failure to protect her child from harm under the circumstances constituted abuse and neglect pursuant to the Family Court Act.

Accordingly, the order of the Family Court, Bronx County (Rhoda J. Cohen, J.), entered August 26, 1988, dismissing so much of the petition as charged respondent Esther J. with abuse and neglect of her daughter, Tania J., should be reversed, on the law and on the facts, without costs or disbursements, the petition reinstated, a finding of abuse and neglect

made and the matter remanded for a dispositional hearing before another Judge.

MURPHY, P. J., CARRO, WALLACH and RUBIN, JJ., concur.

Order, Family Court, Bronx County, entered on or about August 26, 1988, unanimously reversed, on the law and on the facts, without costs and without disbursements, the petition reinstated, a finding of abuse and neglect made and the matter remanded for a dispositional hearing before another Judge.