OPINION OF THE COURT
Marjorie C. Mix, J.
Before the court is a pretrial motion by the District Attorney of Erie County, previously granted party intervenor status herein, to discontinue the above-captioned child protective proceeding pursuant to CPLR 3217 (b). Petitioner Erie County Department of Social Services emphatically disputes the District Attorney’s allegations that the petition is insufficient and there is no evidence to support it; however, the Department has joined the motion and now seeks to withdraw its petition, without prejudice, primarily on the ground that prosecution of the child protective proceeding may be detrimental to any future criminal proceeding. The Law Guardian and respondent Debra P. have also joined the motion. Respondent Anthony P., considered a suspect in the criminal investigation, opposes the motion to discontinue this proceeding.
The Department’s overriding concern about the viability of a possible future criminal proceeding is representative of the manner in which the various parties have permitted extraneous considerations to intrude upon and interfere with this child protective proceeding. The District Attorney has intervened as a party for the stated purpose of preventing discovery and discontinuing this case. While a full, evidentiary fact-finding hearing would provide a basis for determining whether the children have been and would be at risk if returned to either or both of the respondents, matters in other forums or under investigation have been interposed to impede the child protective process. The unfortunate result is the complex interdependence of unrelated issues and procedural complications which frustrate and delay resolution for these children.
The Law Guardian, whose responsibility is not only to express her clients’ wishes, but also to exercise her independent judgment in persuading the court to adopt a position in the children’s best interest, has failed to provide a rational or evidentiary basis for her conclusion that her clients would not be at risk if this proceeding were summarily discontinued without a trial on the merits, and the children were automatically returned to a respondent parent who allegedly endangered them. (Cf., Matter of Keith M., 181 Misc 2d 1012, 1017 [Fam *171 Ct, Erie County 1999].) The Law Guardian asks the court to reinterview the children, who have already convinced the court of their desire to live in their own home with their mother, but does not explain why this resolves the original risk to them or why that risk does not continue.
While counsel for the parties may have various reasons for seeking the discontinuance of this proceeding without a determination on the merits, this court is constrained to discharge its duty as directed by statute. Where a petition has been filed with the Family Court alleging that a child has been neglected, Family Court Act § 1051 (c) provides that the court may dismiss the petition only if “facts sufficient to sustain the petition under this article are not established, or if, in a case of alleged neglect, the court concludes that its aid is not required on the record before it.” Thus, the motion to discontinue this child neglect case squarely raises the question whether, based on the record, the aid of the court remains necessary to protect the children.
This court cannot abdicate its statutory responsibility to protect children from injury or mistreatment, and would be appropriately subject to criticism from the appellate courts were it to do so. “Clearly, the paramount concerns are the best interests and welfare of the child, which required the court to take into account the potential threat to the child’s health and safety.” (Matter of Valerie Leonice T., 107 AD2d 327, 329 [1st Dept 1985].) Further, “[t]he court is duty-bound, not only to determine whether there has been neglect or abuse, but also the likelihood of this conduct in the future.” (Id., at 329, citing Matter of Charmine W., 61 AD2d 769, 770 [1st Dept 1978].)
Background
The Erie County Department of Social Services petitioned on September 2, 1999, pursuant to article 10 of the Family Court Act, for a determination that the children Rafael (also known as Raphael) and Lauren P. are neglected children. The petitioner Department specifically stated upon information and belief that on or about August 17, 1999, the subject children were discovered to have elevated levels of arsenic in their blood, and that this arsenic exposure occurred while the children were in the care and custody of the respondents. Petitioner further alleged that neither respondent has provided any explanation for the arsenic exposure, and that the children’s condition is of such a nature as would ordinarily not exist except by reason of the acts or omissions of the respondents.
*172 Allegations have also come to the attention of the court that hospital testing of respondent Debra P. conducted in August of 1999 evidenced “unusually high levels of arsenic in her body, considered in most cases to be fatal.” (Affidavit of Frank A. Sedita, III, Esq., dated Dec. 21, 1999 if 5 [hereinafter Sedita Aff.].) As a result, the Office of the Erie County District Attorney now considers Anthony P. to be a suspect in a criminal probe into the poisoning of Debra P. {Id. 6-7.) During the pendency of these proceedings, the court has received the previously subpoenaed medical and pharmacy records relative to respondent Debra P. and the subject children, pursuant to Family Court Act § 1038 (a). Following in camera review of the medical and pharmacy records, the court has permitted all counsel to review same.
By motion dated November 24, 1999, respondent Anthony P. sought an order pursuant to CPLR 2308 (a) compelling the West Seneca Police Department to comply with a judicial subpoena duces tecum issued in the above-captioned Family Court child neglect proceeding. By motion pursuant to CPLR 2304 dated December 3, 1999, the Town of West Seneca sought to quash the judicial subpoena duces tecum. By motion dated December 21, 1999, the Erie County District Attorney made application to intervene in this proceeding as a party, and joined the Town in requesting that the subpoena upon the West Seneca Police Department be quashed. The gravamen of the motion to quash was that release of the subpoenaed material could compromise the confidentiality of the ongoing criminal investigation.
By decision and order entered January 25, 2000, the court exercised its discretion in granting the District Attorney’s intervenor motion, upon the condition that the trial would proceed as scheduled and the petitioner and the District Attorney “will coordinate a unified prosecution of this matter.” The court denied the motion to quash respondent P.’s subpoena, however, in view of the right of the respondents in this civil proceeding to have “a full and fair opportunity to obtain and present all evidence to this Court which may be relevant to the critical determination of whether the acts or omissions of either of the Respondents have endangered their children.”
The Instant Motion to Discontinue
The District Attorney, who has now intervened and is considered a coprosecutor in this proceeding with the Department, states that the petition in this child neglect proceeding *173 should be discontinued as against both respondents in view of “the categorical lack of evidence to sustain the petition” against both respondents. In its responsive papers, the coprosecutor and petitioner Erie County Department of Social Services disputes the District Attorney’s claim that there is no evidence of neglect, and contends the petition is “legally sustainable.” (Reply affidavit to motion of intervenor, sworn to by Richard S. Usen, Esq., Feb. 14, 2000 [hereinafter Reply Aff.] 4, 6.) The Department of Social Services vehemently states that the District Attorney “has irresponsibly and flagrantly misstated the facts herein on paragraph 10 of his affidavit and is disingenuously alleging that there is no evidence of neglect and that the within prosecution is unethical.” (Reply Aff. 7.) Moreover, in its most recent submission to the court dated March 3, 2000, the Department reiterates that its petition for neglect “alleges facts which, if proven, may constitute prima facie evidence of neglect” pursuant to Family Court Act § 1046 (a) (ii).
Nevertheless, the Department “concurs with the District Attorney that this proceeding could be detrimental to any future criminal proceeding and in fact may bar such proceeding.” (Reply Aff. 13.) At bottom, it is obvious that the instant motion to discontinue these proceedings would not have been brought to bar were it not for the District Attorney’s claim that Anthony P.’s exercise of his statutory right to discovery herein will detrimentally impact upon the potential criminal proceeding. However, “[w]hile a subsequent criminal proceeding is, of course, a possibility, any such proceeding would be completely independent.” (Matter of Katrina W., 171 AD2d 250, 254 [2d Dept 1991].) For this court, consideration as to any impact these proceedings may have upon a subsequent, independent criminal proceeding must be outweighed by the realization that, as contended in Katrina W. (supra, at 254) “in an article 10 proceeding, the State’s parens patriae interest in promoting the welfare of the child takes on additional significance since an erroneous failure to place the child could have disastrous consequences.” The appellate panel in Katrina W. agreed, holding that “Family Court Act article 10 proceedings provide a vehicle for the State to intervene against the wishes of the parents on behalf of the child * * * and the result of an erroneous failure to remove a child from the home may be horrendous.” (Matter of Katrina W., supra, 171 AD2d, at 255.)
It was with this concern in view that this court conducted a witnessed hearing to determine whether the Department *174 should be permitted to withdraw its petition, thereby removing any impediment to the children’s return to the custody of Debra P. The court is well aware that the moving parties have concluded, albeit conclusorily and without presenting probative evidence, that Debra P. did not self-ingest arsenic and was not responsible for exposing the children to arsenic. Having heard the testimony of Ms. P. and having closely observed her demeanor, the court is not convinced at this time that the exposure of the children to arsenic has been adequately explained and unequivocally attributed to Anthony P., such that the children would not be at risk of further harm if returned to the custody of Debra P.
First, the coprosecutor Department of Social Services is correct that its petition is prima facie sufficient, in that facts elicited at the witnessed hearing did not controvert the allegations that the children were found to have elevated levels of arsenic and neither parent has, thus far, adequately explained the elevated arsenic levels. This court does not equate elevated arsenic levels as necessarily synonymous with arsenic poisoning. The District Attorney’s claim that there is no evidence of the children’s exposure to arsenic is flatly belied by the laboratory results annexed to his motion, which show that the child Rafael “was found to have elevated arsenic levels of questionable etiology,” while the child Lauren had, upon hospital admission, a urine arsenic level of 316, “considered toxic.” (Sedita Aff., exhibits B, C.)
The District Attorney argues that the elevated arsenic levels found in both children may be attributable to organic rather than inorganic arsenic, and that the children’s hair samples did not test positive for arsenic. However, until such time as the court is presented with expert testimony as to any distinctions relative to the toxicity of inorganic versus organic arsenic, including why “elevated levels” of arsenic found in both children and “considered toxic” as to one of the children does not constitute a risk to them, further conclusions regarding the laboratory reports relative to the children would be premature.
The alleged elevated arsenic levels, if established during the fact-finding hearing, would comprise proof of “the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child,” and would therefore constitute “prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible.” (Family Ct Act § 1046 [a] [ii].)
*175 Given the hospital records reflecting elevated and toxic arsenic levels in the children, and lacking any information from experts indicating the children were not thereby at risk, the court must assume for the purposes of the motion at bar that the alleged condition of the children speaks for itself, and is of such a nature as to constitute a prima facie case.
Once the petitioner establishes a prima facie case of child neglect or abuse, the burden of going forward then shifts to the respondents to provide a satisfactory explanation for the child’s condition. (Matter of Nancy B., 207 AD2d 956, 957 [4th Dept 1994]; Matter of Philip M., 82 NY2d 238, 244 [1993].) Thus, since the aid of the court would not be required if the respondents were able to provide an adequate and exculpatory explanation as to why the children had allegedly elevated levels of arsenic, it was entirely appropriate that both respondents be afforded an opportunity to explain, at the hearing on the motion to discontinue these proceedings, the reason for the condition of the children in their care at the time of the remand. Thus far in these proceedings, neither respondent has offered an adequate explanation for the allegedly elevated arsenic levels.
Rather, during her testimony, respondent Debra P. blamed respondent Anthony P. for arsenic exposure, but declined to explain her basis for this belief to the court, citing a privileged communication between herself and her attorney involving her attorney’s investigation of this case. The court is, therefore, without a substantive explanation as to why it should believe that Anthony P., rather than Debra P., is culpable for arsenic exposure. Instead, the court must necessarily rely upon its assessment of the credibility of Debra P.’s testimony that she did not bring arsenic into the P. home or knowingly ingest it. Since the credibility of respondent Debra P.’s denials as to these relevant issues was directly at issue, there is no force to the argument that questions regarding her psychiatric and medical history were unrelated to the subject matter of the hearing.
While Debra P. denied self-ingesting arsenic, she testified that she has been under psychiatric care since February 1998, and that she self-administered an overdose of Xanax on March 1, 1999. Although Ms. P. insisted in her testimony that she did not deliberately take an overdose, contemporaneous hospital records do not support this disclaimer. At that time, Ms. P. reported to the hospital recorder her husband’s marital infidelity and stated that “I’ve had two years of hell and just couldn’t take it anymore.” (Respondent Anthony P.’s exhibit A.)
*176 The testimony adduced at the hearing also reflected that in 1998-1999, Debra P. was using medications from five different pharmacies, prescribed by various doctors, which included an array of painkillers and muscle relakants. Ms. P. also tested positive for opiates. Ms. P. attributed her prescription drug use to back pain, which she claimed suddenly and inexplicably ceased when she was hospitalized in August of 1999 relative to arsenic toxicity. However, she testified that she continues to take 28-30 pills per day for pain associated with her symptoms from arsenic exposure in August of 1999.
Various aspects of Ms. P.’s testimony and demeanor at the hearing, in addition to her denial of deliberately self-ingesting an overdose of Xanax, are troubling in terms of an assessment of her credibility. For example, Ms. P. has previously made sworn statements in motion papers submitted to this court that three prior hospitalizations in June and July 1999 were due to “abdominal pain and distension, vomiting and nausea,” presumably due to progressive arsenic poisoning. (See, affidavit of Debra P. in support of order to show cause, sworn to Oct. 27, 1999 fifí 19-22.) However, during cross-examination she conceded that contemporaneous hospital records reflect these admissions were due to back, neck and shoulder pain. (Respondent Anthony P.’s exhibits G-l, G-2, G-3.) No mention is made in the June and July hospital records of abdominal pain and distension, vomiting or nausea, and Ms. P.’s attempts to explain this discrepancy during her testimony were not convincing. The conclusion follows that the chronology of progressive arsenic poisoning which Ms. P. has previously provided to this court is not supported by the record.
As the Department points out, respondent Anthony P.’s refusal to testify in this proceeding entitles the court to draw the strongest possible inference against him that the evidence presented permits. (See, e.g., Matter of Nicole T., 178 AD2d 849 [3d Dept 1991]; Matter of New York City Commr. of Social Servs. [Jason C.] v Elminia E., 134 AD2d 501 [2d Dept 1987].) However, the countervailing evidence presented thus far in the limited scope hearing does not permit this court to infer, without more, that respondent Anthony P. is responsible for the elevated levels of arsenic found in the children. To do so would rely upon uncritical acceptance of Debra P.’s assignment of blame. But Debra P.’s testimony indicated that she may have had a motive to self-administer arsenic so as to criminally implicate her estranged husband and had, indeed, self-administered a drug overdose a few months before. She was *177 being supplied with a profusion of painkillers and muscle relaxants through five different pharmacies, prescribed by four doctors, a level of ingestion which may suggest drug dependence. Her claims in her October 1.999 affidavit that hospitalizations in June and July were indicative of progressive arsenic exposure, in view of the actual hospital records, raise questions as to credibility. While respondent Anthony P.’s refusal to testify precludes any clarification as to the children’s condition, to infer that his silence constitutes an explanation goes too far.
Thus, neither respondent has offered an adequate explanation of the children’s condition. Therefore, it is troubling to this court that neither the Department nor the Law Guardian provides any cogent basis for their conclusion that the children would now be free from risk if returned to Ms. P.’s care.
The District Attorney believes, as do the Department of Social Services and the Law Guardian, that respondent father is solely responsible. The District Attorney, Department of Social Services, and the Law Guardian assert that an order of protection issued in a probation violation matter which protects the respondent Debra P. from contact with respondent Anthony P. is sufficient to protect the children. This presumes that Anthony P. administered poison to Debra P„, and by extension to the children, prior to any determination of responsibility for that in this or any other court. Absent admission, proof to such effect in this court, or criminal conviction, this court must protect children who may have been exposed to risk of harm by either parent during a period of severely dysfunctional family life.
For the reasons discussed above, and after conducting a witnessed hearing on the motion to discontinue the proceeding, the court is unable to conclude that “its aid is not required on the record before it,” and will deny the application to withdraw the petition at this time. (See, Family Ct Act § 1051 [c].)
While the moving parties before this court may be motivated by a desire to facilitate criminal proceedings against one parent, or to alleviate the anxiety the other parent may be experiencing, this is a child protective proceeding and the collateral consequences regarding the parents are not its object. As stated in Matter of Diane P. (110 AD2d 354, 358 [2d Dept 1985]): “On balance, the State’s interest in protecting abused children and the unthinkable consequences to the children if they are left in the hands of abusive parents far outweigh the potential consequences to the parents.”
Finally, as observed above, the motion to dismiss this proceeding was motivated by the reluctance of the District At *178 torney to produce records of its investigation to counsel for Anthony P. The District Attorney obtained a stay of this court’s decision and order that disclosure be made, pending the completion of the hearing on the motion to dismiss. It is clear, now that the limited scope hearing has been had, that full discovery remains necessary in order to aid the parties and the court in the fact-finding process. Accordingly, the conclusion of the court made in the January 25, 2000 decision and order is reiterated here: “The Court is not unmindful of the concerns expressed by the Town and the People that the confidentiality of the ongoing criminal investigation may be compromised to some extent by production pursuant to the subject subpoena. It bears emphasis, however, that this Court must ultimately determine whether the best interests of the children require that they be removed from the custody of either or both of their parents, or returned to either or both parents. The Court concludes that the interest of the Town and the People in maintaining the confidentiality of the police investigation is outweighed by the risk of harm to the subject children should an erroneous determination result from the parties and the Court being deprived of probative information directly relating to the allegations in the petition at bar.”
After considering the written submissions of all parties on the instant motion, and after formulating the determination to deny the pending motion to withdraw, the court has reviewed the discovery provided in camera pursuant to the February 4, 2000 order of Acting Presiding Justice Samuel L. Green. Upon careful review, the court finds and concludes that the discovery material which has been provided is relevant, material, and necessary in the litigation of this matter, and that no privilege or doctrine is applicable so as to prevent its dissemination to counsel for the litigants in this civil proceeding.
Wherefore, it is hereby ordered that the motion to discontinue the instant proceeding is denied; and it is further ordered that the sealed records of the West Seneca Police Department delivered to chambers of this court concerning the investigation of arsenic exposure involving Lauren and Rafael (also known as Raphael) P., Debra (also known as Deborah) P. and Anthony P. shall be made available to counsel for the parties.
[Portions of opinion omitted for purposes of publication.]